**O**

# United States District Court
# Central District of California

HERBALIFE INTERNATIONAL OF AMERICA, INC.,

          Plaintiff,

    v.

EASTERN COMPUTER EXCHANGE INC. and GERRY BERG,

          Defendants.

Case № 2:22-cv-00347-ODW (AGRx)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [19]**

## I.   INTRODUCTION

Plaintiff Herbalife International of America brought suit against Defendants Eastern Computer Exchange, Inc. and Gerry Berg, alleging that Defendants conspired to provide Eastern an unfair business advantage to the detriment of Herbalife. (Compl. ¶ 7, ECF No. 1.)   Defendants answered and asserted six counterclaims against Herbalife sounding in contract.  (Answer & Countercl. ("Countercl."), ECF No. 16.)   Herbalife now moves to dismiss Defendants' counterclaims.  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 19-1.)   For the reasons set forth below, the Court **GRANTS** in **PART** and **DENIES** in **PART** Herbalife's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

Herbalife is a global nutrition company that provides consumers with nutrition solutions in the area of weight management, sports nutrition, and health and wellness. (Pl.'s Compl. ¶ 8, ECF No. 1.)  Gerry Berg is Herbalife's former Vice President of Infrastructure & Operations.  (*Id*. ¶ 15.)  Eastern is a technology company that partners with computer equipment manufacturers to resell such equipment to users such as Herbalife.  (*Id*. ¶ 19.)

In 2019, Eastern became a vendor for Herbalife and under the applicable Master Services Agreement ("MSA"), Eastern "was to provide professional services, including but not limited to, engineering services, and program/project management services."  (Countercl. ¶ 5.)  Eastern and Herbalife also signed a Non-Disclosure Agreement ("NDA"), prohibiting the parties from using any confidential information of the other.  (*Id*.)  In January 2020, Eastern began working with Herbalife's storage and network teams in an effort to review Herbalife's current systems and create and design the proper solutions for Herbalife's business continuity and disaster recovery needs ("BCDR").  (*Id.* ¶ 6.)

In February 2020, Herbalife asked Eastern to provide a BCDR solution and for the next three months, Eastern worked toward that objective.  (*Id.* ¶ 7.)  Eventually, Eastern proposed a BCDR solution that would cost approximately $11.5 million dollars and involve multiple phases (the "BCDR Project").  (*Id.*)  In April 2020, an Herbalife senior manager verbally awarded Eastern Phase 1 of the BCDR Project.  (*Id.* ¶ 8.)  In May 2020, senior officers at Herbalife, including Berg, requested that Eastern work on Phase 2 of the BCDR Project.  (*Id.*)  Herbalife informed Eastern that Herbalife would require approval of Phase 1 and Phase 2 from the Board of Directors. (*Id.* ¶ 9.)

On June 29, 2020, Eastern and Herbalife entered into a separate Enterprise License Agreement ("ELA"), whereby Eastern would procure certain software, services, and tokens or credits from manufacturers, which Herbalife would then

purchase from Eastern.   (*Id.* ¶ 11.)   Pursuant to the terms of the ELA, Eastern purchased manufacturer tokens and licenses on behalf of Herbalife.  (*Id.*)  Herbalife never paid Eastern for, or purchased from Eastern, the tokens and licenses.  (*Id.*)

On October 27, 2020, an Herbalife officer presented Phase 1 and Phase 2 to the Board of Directors, and Herbalife confirmed to Eastern that the Board of Directors approved, and awarded to Eastern, the BCDR Project.  (*Id.* ¶ 13.)  On October 28, 2020, an Herbalife officer ordered Eastern to "order [equipment for] Phase 1 and Phase 2 tomorrow."  (*Id.* ¶ 14.)  On October 29, 2020, relying upon Herbalife's communications from the previous day, including express instructions to order the equipment the next day, Eastern began discussions with equipment managers.  (*Id.* ¶ 16.)  The following day, Eastern placed an order on Herbalife's behalf for the equipment required for the BCDR project.  (*Id.* ¶ 16.)  After awarding Eastern Phases 1 and 2, Herbalife refused to pay Eastern for the services Eastern rendered and the equipment Eastern ordered on Herbalife's behalf for the BCDR project.[2]  (*Id.* ¶ 28.)

Accordingly, Herbalife brought this action alleging five causes of action against Defendants: (1) fraudulent concealment; (2) breach of fiduciary duty; (3) breach of contract; (4) conversion; and (5) declaratory relief.  (*See* Pl.'s Compl.)  Defendants then filed an answer and asserted six counterclaims: (1) breach of oral contract; (2) breach of written contract; (3) promissory estoppel; (4) negligent misrepresentation; (5) conversion; and (6) declaratory relief.  (Countercl. ¶¶ 29–59.)  Herbalife now moves to dismiss all six of Defendants' counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

### III.        LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal

---

[2] According to Herbalife, however, Defendants never received approval for the BCDR Project and Herbalife never authorized Eastern's purchase of the equipment.   (Pl.'s Compl. ¶¶ 29–34, 42.)  Instead, Herbalife alleges, Defendants created a fraudulent purchase order from Herbalife in order to be compensated for unapproved purchases and services.  (*Id.* ¶¶ 45–49.)

theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)" by including a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (The "[f]actual allegations must be enough to raise a right to relief above the speculative level."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.   DISCUSSION

Defendants fail to state a claim as to five of their six counterclaims. The Court thus dismisses the five counterclaims and provides leave to amend for four of them.

**A.   First Counterclaim: Breach of Oral Contract**

In their first counterclaim, Defendants allege Herbalife breached a contract that awarded Defendants the BCDR Project. (Countercl. ¶¶ 29–33.)

Under California law, the elements for breach of oral contract are identical to those for breach of written contract. *Francois & Co., LLC v. Nadeau,* 334 F.R.D. 588, 597–98 (C.D. Cal. 2020). To state a claim for breach of contract, "a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach." *Lyons v. Bank of Am., N.A.*, No. 11-01232 CW, 2011 WL 3607608, at *2 (N.D. Cal. Aug. 15, 2011) (citing *Armstrong Petrol. Corp. v. Tri–Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004)).

The Court finds that Defendants do not state a claim for breach of oral contract. First, Defendants do not adequately plead the existence of a contract, as Defendants do not allege exactly what contract Herbalife breached. Defendants state that they entered into a contract with Herbalife in which Defendants would be awarded the BCDR Project, and that Herbalife breached the terms of the agreement. (Countercl. ¶¶ 29–31.) Although the counterclaim includes the basic terms of the contract (i.e., each party's general obligations thereunder), it does not provide any other specificities of the contract, such as the effective date of the contract, who orally communicated to whom sufficient information to form this contract, the duration of the contract, or what specific provisions Herbalife breached. *See, e.g.*, *Alpha GRP, Inc. v. Subaru of Am., Inc.*, No. CV 18-2133 MWF (MRWx), 2018 WL 5986989, at *10 (C.D. Cal. June 8, 2018) (dismissing breach of contract claim because it lacked details as to what, precisely, defendants promised to pay, the effective date of the contract, the duration of the contract, and other terms).

Moreover, the formation of a contract requires mutual assent consisting of offer and acceptance. *See Guadagno v. E*Trade Bank,* 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008). Defendants do allege sufficient facts to establish that Herbalife offered Defendants the BCDR Project, and that Defendants accepted the offer. *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007) ("Mutual assent is accomplished when a specific offer is communicated to the offeree, and an

acceptance is subsequently communicated to the offeror.")  Defendants thus do not sufficiently allege mutual assent.  Therefore, this counterclaim lacks the details to properly allege a valid contract and to identify the parties' contractual obligations relating to the  BCDR Project.  Thus, the Court **GRANTS** the Motion as to Defendants' first counterclaim for breach of oral contract, with leave to amend these deficiencies.

**B.     Second Counterclaim: Breach of Written Contract**

Turning to the second counterclaim, Defendants contend they and Herbalife entered into three agreements—the NDA, the MSA, and an Enterprise License Agreement.  (Countercl. ¶ 35.)  Defendants argue Herbalife breached these contracts by disclosing confidential information and refusing to pay for services and equipment associated with the BCDR Project.  (*Id*. ¶ 37.)   Although Defendants list the contracts they entered into with Herbalife, (*id*. ¶ 35), Defendants fail to properly plead that Herbalife breached the terms of those contracts.  Defendants do not explain which terms of each contract Herbalife allegedly breached nor do Defendants explain how those terms were breached.  For example, Defendants do not describe the type of confidential information Herbalife supplied to Defendants' competitor in violation of the NDA or any other context for this alleged disclosure.  Defendants therefore do not adequately plead their breach of contract counterclaim.  Thus, the Court **GRANTS** the Motion as to Defendants' second counterclaim for breach of written contract, with leave to amend these deficiencies.

**C.     Third Counterclaim: Promissory Estoppel**

Herbalife contends Defendants fail to state a promissory estoppel claim because this counterclaim is duplicative of the breach of contract claim and, alternatively, Defendants fail to assert a clear and unambiguous promise.  (Mot. 9–10.)  The Court finds that although the promissory estoppel claim is not duplicative, it nevertheless must be dismissed because Defendants fail to sufficiently plead the claim.

To state a promissory estoppel claim under California law, a plaintiff must allege "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that is] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07–02864-JSW, 2007 WL 3232276, *6 (N.D. Cal. Nov. 1, 2007) (citing *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976)). An action for promissory estoppel, however, cannot lie where a "valid contract, supported by consideration, governs the same subject matter as the alleged promise." *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) (applying California law); *see also Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) ("Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract."). Courts, however, have permitted plaintiffs to proceed simultaneously with claims for promissory estoppel and breach of contract at the pleading stage when there are disputes as to whether a valid contract has been formed, as is the case here. *See, e.g.*, *Fleet v. Bank of America N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (permitting promissory estoppel and breach of contract claims to survive defendant's demurrer, despite factual inconsistency, because it was not clear that the letter at issue constituted a contract); *see also TreeFrog Devs., Inc. v. Seidio, Inc.*, No. CV 13-0158, 2013 WL 4028096, at *8 (S.D. Cal. Aug. 6, 2013) (permitting promissory estoppel and breach of contract claims to survive past the dismissal stage "[n]otwithstanding [the] foreseeable inconsistency in proof" when parties disputed the existence of a contract).

Here, Herbalife incorrectly asserts Defendants' counterclaim is barred because it is duplicative of the breach of contract claim. (Mot. 9–10.) Although Defendants' promissory estoppel claim arises under the same allegations that give rise to Defendants' breach of contract claim—that Defendants were entitled to the BCDR Project, (Countercl. ¶ 40)—at the pleading state, "[a] party may state as many separate

claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).  Thus, the Court declines to dismiss the claim on this basis.

Herbalife also argues the promissory estoppel counterclaim is barred because Defendants do not allege a clear and unambiguous promise.  (Mot. 10.)  However, in their counterclaim, Defendants allege Herbalife promised to award them the BCDR Project.    (Countercl.  ¶ 40.)    Defendants  asserted  several  allegations  in  the counterclaim suggesting a clear and unambiguous promise.  (*See id.* ¶ 13 ("Vetere presented Phase 1 and Phase 2 to the Board of Directors, and Herbalife confirmed to Eastern that the project was approved by the Board of Directors and awarded to Eastern."); ¶ 21 (similar); *see also* ¶ 19.)  Thus, Defendants have alleged a "promise of sufficient definitiveness and clarity, to justify applying promissory estoppel."  *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1186 (1998).  The Court therefore **DENIES** the Motion as to Defendants' third counterclaim for promissory estoppel.

**D.    Fourth Counterclaim: Negligent Misrepresentation**

Herbalife argues Defendants' negligent misrepresentation counterclaim is barred  under  the  economic  loss  doctrine  and  Defendants  have  not  satisfied  the heightened pleading standard of Rule 9(b).  (Mot. 7–9.)

Under California law, the economic loss rule applies to claims for negligent misrepresentation.  *See Fisher v. Honda N. Am., Inc.*, No. LA CV 13–09285 JAK, 2014 WL 2808188, at *7 (C.D. Cal. June 12, 2014).  "Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.  Instead, the claimant is limited to recovery under the law of contract."  *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995).  Under the economic loss doctrine, "purely economic losses are not recoverable in tort."  *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013).  Moreover, the rule "generally bars tort claims based on contract breaches, thereby limiting contracting parties to contracting damages."  *UMG Recordings, Inc v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (internal

quotation marks omitted).  "Courts have also applied the economic loss rule to bar negligent misrepresentation claims where the purported negligent conduct is conceptually indistinct from a contract breach." *UMG Recordings*, 117 F. Supp. 3d at 1105.

Here, Defendants' negligent misrepresentation and breach of contract counterclaims are both based on Herbalife awarding Defendants the BCDR Project. (Countercl. ¶ 47.)  The economic loss rules bars Defendants from bringing a breach of contract theory and then arguing the same facts on a tort theory as well.  *See UMG Recordings*, 117 F. Supp. 3d at 1105 (finding a breach of contract claim subsumes the negligent misrepresentation claim).  To recover for negligent misrepresentation, Defendants must identify a violated independent non-contractual duty, or the claims are barred by the economic loss doctrine.  Defendants do not identify any such duty.

Moreover, Defendants do not allege harm above and beyond the broken contractual agreement, as Defendants only point to monetary damages for lost profits, restocking fees, financing fees, and other amounts required to pay the equipment manufacturer.  (*Id*. ¶ 51.)  Defendants aver purely economic losses, which are not recoverable under the tort of negligent misrepresentation.  Therefore, the economic loss rule bars Defendants' negligent misrepresentation claim.

Because the Court finds Defendants fail to adequately plead this counterclaim based on the economic loss doctrine, the Court need not analyze whether Defendants' negligent misrepresentation claim meets the Rule 9(b) pleading standards.  Thus, the Court **GRANTS** the Motion as to Defendants' fourth counterclaim for negligent misrepresentation with leave to amend these deficiencies.

**E.     Fifth Counterclaim: Conversion**

Herbalife further contends Defendants fail to state a claim for conversion. (Mot. 11.)  To state a claim for conversion, a plaintiff must plead facts demonstrating that a defendant wrongfully took or disposed of property belonging to the plaintiff. *Fortaleza v. PNC Fin. Servs. Grp.*, Inc., 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2008).

The elements of a conversion claim are: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (applying California law). A party alleging conversion must also show that the alleged converter has assumed control over the property "or that the alleged converter has applied the property to his own use." *Id*.

Here, Defendants again argue Herbalife was entrusted with proprietary confidential information that Herbalife improperly divulged to Defendants' competitors. (Countercl. ¶ 57.) This allegation is insufficient as Defendants fail to allege specific facts indicating how Herbalife affirmatively took Defendants' property from them. Moreover, Defendants state that Herbalife conspired to convert confidential information, but do not specify the type of confidential information that Herbalife wrongfully divulged to Defendants' competitors or identify any specific competitor. (*Id*.) Without more information as to the type and disposition of the confidential information, Defendants fail to sufficiently plead a counterclaim for conversion. Thus, the Court **GRANTS** the Motion as to Defendants' fifth counterclaim for conversion with leave to amend these deficiencies

**F.     Sixth Counterclaim: Declaratory Relief**

By way of their sixth and final counterclaim, Defendants seek declaratory relief for Herbalife to pay Defendants for all equipment and software Defendants ordered for the BCDR Project. (Countercl. ¶ 54.) Declaratory relief is a remedy and not an independent cause of action. *See Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) ("Declaratory and injunctive relief are not independent claims, rather they are forms of relief."); *Taheny v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123 LKK, 2010 WL 5394315, at *11 (E.D. Cal. Dec. 22, 2010) ("Plaintiffs' purported claim for 'declaratory relief' is a remedy, not a cause of action."). Because declaratory relief is not its own cause of action—and such relief is

already sought by way of Defendants' contract claims—the Court **DISMISSES** Defendants' counterclaim for declaratory relief.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** in **PART** and **DENIES** in **PART** Herbalife's Motion to Dismiss Defendants' Counterclaim and provides **leave to amend** as described above.  (ECF No. 19.)  If Defendants choose to file an Amended Counterclaim, they shall do so within **twenty-one (21) days** of the date of this Order, in which case Herbalife shall answer or otherwise respond within **fourteen (14) days** of the filing.  If Defendants choose not to amend, then as of the lapse of this deadline to amend, their claims shall be deemed dismissed with prejudice.

**IT IS SO ORDERED.**

June 8, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**