O

# United States District Court
# Central District of California

| | |
|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EASTERN COMPUTER EXCHANGE INC. et al., <br><br> Defendants. | Case № 2:22-cv-00347-ODW (AGRx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM [39]** |

## I.   INTRODUCTION

Plaintiff Herbalife International of America, Inc. brings suit against Defendant Eastern Computer Exchange, Inc., alleging that Eastern fraudulently ordered millions of dollars of computer equipment on behalf of Herbalife.  (First Am. Compl. ("FAC") ¶ 5, ECF No. 35.)  In its First Amended Counterclaim, Eastern asserts six counterclaims against Herbalife.  (First Am. Countercl. ("Am. Countercl.") ¶¶ 34–71, ECF No. 38.)  Herbalife now moves to dismiss four of Eastern's counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss Am. Countercl. ("Motion" or "Mot."), ECF No. 39-1.)  The Motion is fully briefed.

(Opp'n, ECF No. 40; Reply, ECF No. 41.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Herbalife's Motion.[1]

## II. BACKGROUND

Herbalife is a global nutrition company that provides consumers with nutrition solutions in the areas of weight management, sports nutrition, and health and wellness. (FAC ¶ 6.) Eastern is a technology company that partners with computer equipment manufacturers to resell such equipment to end users such as Herbalife. (*Id.* ¶ 13.)

On December 19, 2019, Herbalife and Eastern entered into a Master Services Agreement ("MSA"). (Am. Countercl. ¶ 9.) Under the MSA, Herbalife agreed to pay Eastern for professional services, including, but not limited to, "consulting services, design, and implementation, expansion/upgrades, health & performance assessments of Herbalife's networks, servers, cloud systems, storage, and data protection." (*Id.* ¶¶ 9–10.) Eastern and Herbalife also signed a Non-Disclosure Agreement ("NDA"), prohibiting the parties from using the confidential information of the other party. (*Id.* ¶¶ 6–8.) In January 2020, Eastern began working with Herbalife's storage and network teams to review Herbalife's current systems and to create solutions for Herbalife's business continuity and disaster recovery needs ("BCDR"). (*Id.* ¶ 11.)

In February 2020, Herbalife asked Eastern to provide a BCDR solution and, for the next three months, Eastern worked toward that objective. (*Id.* ¶ 12.) In March 2020, Eastern proposed "Phase 1," an initial BCDR solution for Herbalife's Winston Salem location that would cost no more than $11.5 million dollars. (*Id.*) Eastern submitted a written proposal, and Herbalife verbally awarded Phase 1 to Eastern. (*Id.*) However, after Herbalife awarded Phase 1 to Eastern, Herbalife informed Eastern that Herbalife would require approval from the Board of Directors of the Phase 1 and subsequent Phase 2 proposals. (*Id.* ¶ 13.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

In May 2020, senior officers at Herbalife requested that Eastern begin to work on "Phase 2" of the BCDR project. (*Id.*) In June 2020, Eastern submitted its proposal for Phase 2. (*Id.*) Between May and October 2020, approximately eighteen Eastern employees spent over 8,000 hours to prepare the proposals for Phases 1 and 2 for presentation to the Board of Directors. (*Id.* ¶ 15.)

On June 29, 2020, Eastern and Herbalife entered into a separate Enterprise License Agreement ("ELA"), whereby Herbalife agreed to purchase certain software, services, licenses, and purchasing tokens or credits from Eastern. (*Id.* ¶ 32.) Pursuant to the terms of the ELA, Eastern purchased manufacturer tokens and licenses on behalf of Herbalife. (*Id.*) Herbalife never paid Eastern for the tokens and licenses. (*Id.*)

On October 27, 2020, Rhonda Vetere, Herbalife's Executive Vice President and Chief Information Officer, presented the proposals for Phases 1 and 2 of the BCDR project to the Board of Directors. (*Id.* ¶¶ 5, 17.) Vetere confirmed to Eastern that the Board of Directors approved, and awarded to Eastern, the BCDR project. (*Id.* ¶ 17.) On October 28, 2020, another Herbalife representative, Peter Bray, "confirmed that Herbalife awarded Phase 1 and Phase 2 to Eastern, and instructed Eastern's team to 'order [the equipment for] Phase 1 and Phase 2 tomorrow.'" (*Id.* ¶ 18.) On October 29, 2020, relying upon Herbalife's communications, including express instructions to order the equipment the next day, Eastern began communicating with equipment managers. (*Id.* ¶ 20.) The following day, Eastern placed an order on Herbalife's behalf for the equipment for the BCDR project. (*Id.*) Herbalife later refused to pay Eastern for the services Eastern rendered and the equipment Eastern ordered on Herbalife's behalf for the BCDR project. (*Id.* ¶ 31.)

As a result of the ensuing dispute between the parties, Herbalife sued Eastern. (Compl., ECF No. 1.) Eastern asserted six counterclaims against Herbalife, which Herbalife moved to dismiss. (Answer & Countercl., ECF No. 16; Mot. Dismiss Countercl., ECF No. 19.) After the Court granted in part and denied in part

Herbalife's motion with leave to amend, (Order, ECF No. 37), Eastern filed its operative First Amended Counterclaim, again asserting six counterclaims against Herbalife: (1) breach of oral contract; (2) breach of written contract; (3) promissory estoppel; (4) negligent misrepresentation; (5) *quantum meruit*; and (6) conversion, (Am. Countercl. ¶¶ 34–71). Herbalife now moves to dismiss four of Eastern's amended counterclaims: (1) breach of oral contract (first counterclaim); (2) negligent misrepresentation (fourth counterclaim); (3) *quantum meruit* (fifth counterclaim); and (4) conversion (sixth counterclaim).

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to this standard, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, a court need not blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*,

266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV. DISCUSSION

Herbalife moves to dismiss Eastern's first, fourth, fifth, and sixth counterclaims.

### A. Breach of Oral Contract (First Counterclaim)

On Herbalife's first motion to dismiss Eastern's breach of oral contract counterclaim, the Court dismissed this counterclaim for lack of sufficient facts concerning the details of the oral contract and its formation. (Order 5–6.) The Court granted Eastern leave to amend these deficiencies. (*Id.*) Eastern amended its counterclaim, and Herbalife now moves to dismiss on the basis that Eastern fails to sufficiently plead the terms of the alleged contracts, which terms Herbalife breached, and facts supporting any breaches. (Mot. 4–6.)

Under California law, the elements for breach of oral contract are identical to those for breach of written contract. *Francois & Co., LLC v. Nadeau,* 334 F.R.D. 588, 597–98 (C.D. Cal. 2020). "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Moreover, the formation of a contract requires mutual assent consisting of an

offer and acceptance. *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007). "Mutual assent is accomplished when a specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the offeror." *Id.*

In its amended breach of oral contract counterclaim, Eastern alleges additional facts concerning the formation and terms of its alleged contracts with Herbalife. (*See* Am. Countercl. ¶¶ 34–39.) First, Eastern alleges that it submitted to Herbalife a written proposal for Phase 1 of the BCDR project. (*Id.* ¶¶ 12, 34.) In that proposal, Eastern offered to develop and complete an initial BCDR solution for Herbalife's Winston Salem location, including all necessary software, equipment, and services, for a cost of no more than $11.5 million dollars. (*Id.*) Eastern further alleges that, in April 2020, Mike Familetti, a Senior Manager at Herbalife, orally accepted Eastern's proposal for Phase 1. (*Id.*) This is sufficient to allege that Eastern and Herbalife entered into a contract for Phase 1 of the BCDR project.

Second, Eastern alleges that it submitted to Herbalife a proposal for Phase 2 of the BCDR project, as well as a subsequent bid. (*Id.* ¶ 35.) Pursuant to Eastern's Phase 2 bid, Eastern offered to provide all software, equipment, and services necessary to implement and complete Phase 2 of the BCDR project for a cost of $42,413,678.30. (*Id.*) Eastern alleges that, on December 28, 2020, Rhonda Vetere, Herbalife's Executive Vice President and Chief Information Officer, accepted Eastern's Phase 2 bid. (*Id.* ¶¶ 5, 35.) This is sufficient to allege that Eastern and Herbalife entered into a contract for Phase 2 of the BCDR project.

Third, Eastern alleges that, at an October 28, 2020 meeting, Marty O'Brien, an Eastern employee, "asked whether Herbalife would like to order the equipment necessary for the BCDR project." (*Id.* ¶¶ 18, 36.) In response, Peter Bray, on behalf of Herbalife, instructed O'Brien to purchase the equipment the following day, to be delivered before the end of the year. (*Id.* ¶ 36.) Eastern understood Herbalife would

pay for the cost of the equipment. (*Id.*) This is sufficient to allege that Eastern and Herbalife entered into a contract for the purchase of this equipment.

Eastern alleges that it performed in accordance with these contracts, except to the extent it was excused. (*Id.* ¶ 37.) Eastern further alleges that Herbalife breached these contracts by failing to move forward with Phases 1 and 2 of the BCDR project and failing to pay Eastern. (*Id.* ¶ 38.) Although Eastern's allegation that Herbalife "fail[ed] and refus[ed] to move forward with Phase 1 and Phase 2 of the approved BCDR project" lacks specificity, Eastern does, at a minimum, sufficiently allege that Herbalife breached these contracts by failing to pay Eastern pursuant to the contracts. (*Id.* ¶¶ 31, 38.) The Court finds that, at this stage, these allegations are sufficient for Eastern to proceed on its breach of oral contract counterclaim.

Accordingly, the Court **DENIES** Herbalife's Motion as to Eastern's counterclaim for breach of oral contract.

## B. Negligent Misrepresentation (Fourth Counterclaim)

In its prior order granting Herbalife's motion to dismiss Eastern's negligent misrepresentation counterclaim, the Court found that the economic loss rule barred Eastern's counterclaim as alleged. (Order 9.) The Court granted Eastern leave to amend. (*Id.*) Herbalife again moves to dismiss Eastern's amended negligent misrepresentation counterclaim on the basis that it is barred under the economic loss doctrine and also that Eastern has not satisfied the heightened pleading standard of Rule 9(b). (Mot. 6–9.)

Under the economic loss doctrine, "purely economic losses are not recoverable in tort." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013). Moreover, the economic loss doctrine "generally bars tort claims based on contract breaches, thereby limiting contracting parties to contracting damages." *UMG Recordings, Inc v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (internal quotation marks omitted). "Courts have also applied the economic loss rule to bar negligent misrepresentation claims where the

purportedly negligent conduct is conceptually indistinct from a contract breach." *Id.* at 1105.

Here, Eastern's negligent misrepresentation and breach of contract counterclaims are both premised on Eastern and Herbalife's alleged contract concerning the purchase of equipment for Phases 1 and 2 of the BCDR project. (Am. Countercl. ¶¶ 36, 52.) As the Court explained in its prior order, the economic loss rule accordingly bars Eastern from bringing a breach of contract theory and then arguing the same facts pursuant to a tort theory as well. (*See* Order 9 (citing *UMG Recordings*, 117 F. Supp. 3d at 1105 (finding breach of contract claim subsumed negligent misrepresentation claim)).)

Eastern argues that California courts recognize exceptions to the economic loss rule, including where the conduct alleged: (1) "breaches a duty imposed by some type of 'special' or 'confidential' relationship," or (2) "was committed 'intending or knowing that such a breach will cause severe, unmitigable harm in the form of [. . .] substantial consequential damages.'" (Opp'n 11 (alterations in original)); *see also F.D.I.C. v. CoreLogic Valuation Servs., LLC*, No. SA CV 11-0704 DOC (ANx), 2011 WL 5554324, at *4 (C.D. Cal. Nov. 14, 2011). However, the Court finds that Eastern has not alleged sufficient facts indicating that its negligent misrepresentation counterclaim falls within one of these exceptions. First, Eastern does not allege that it had a special or confidential relationship with Herbalife that would impose any non-contractual duties and, rather, refers only to "the working relationship that Eastern and Herbalife had developed over the course of the [BCDR] project."[2] (Opp'n 11; Am. Countercl. ¶ 55.) Second, Eastern's allegations of harm—"loss of its business reputation with its vendors, and the restocking fee that it had to pay to its

---

[2] Eastern also alleges that it relied upon "Mr. Bray's representations due to Mr. Bray's role at Eastern." (Am. Countercl. ¶ 55.) However, Eastern inconsistently alleges that Bray is a representative of Eastern, (*id.*), and Herbalife, (*id.* ¶¶ 18, 36). Further, Eastern does not explain how "Mr. Bray's role at Eastern," or at Herbalife for that matter, conferred a special or confidential relationship that would impose a non-contractual duty. (*Id.* ¶¶ 18, 20, 36, 52.)

third-party vendor," (Am. Countercl. ¶ 56)—are "purely economic losses [that] are not recoverable in tort," *NuCal Foods*, 918 F. Supp. 2d at 1028; *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5304852, at *10 (N.D. Cal. Oct. 24, 2018) ("[D]amages to a business's goodwill and reputation are commercial losses encompassed by the economic loss doctrine.").

Because the Court finds that Eastern's negligent misrepresentation counterclaim is barred by the economic loss doctrine, the Court need not reach the question of whether Eastern's allegations satisfy Rule 9(b) pleading standards. The Court **GRANTS** Herbalife's Motion as to Eastern's negligent misrepresentation counterclaim and, given that Eastern already had an opportunity to cure these deficiencies, **DISMISSES** this claim **without leave to amend**. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (finding failure to cure pleading deficiencies is "strong indication that the plaintiffs have no additional facts to plead").

C. *Quantum Meruit* **(Fifth Counterclaim)**

In its Amended Counterclaim, Eastern alleges for the first time[3] that Herbalife is liable to Eastern in *quantum meruit* for the services and goods that Eastern provided in relation to Phases 1 and 2 of the BCDR project. (Am. Countercl. ¶¶ 58–66.) Herbalife moves to dismiss Eastern's *quantum meruit* counterclaim on the basis that Eastern cannot allege both an express contract and an implied-in-law contract based on the same transaction without also alleging facts to reconcile its contradictory claims. (Mot. 10.)

---

[3] The Court granted Eastern limited leave to amend to correct the deficiencies identified in the Court's prior order. (Order 11.) The Court did not grant Eastern leave to add additional claims. (*Id.*) This alone is sufficient to dismiss Eastern's *quantum meruit* counterclaim. *See DeLeon v. Wells Fargo Bank, N.A.*, 10-cv-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("In this case, the prior order granting leave to amend was limited in scope, and Plaintiffs were therefore required to seek leave of the Court before adding new claims."). Regardless, the Court finds that Eastern fails to allege sufficient facts in support of its *quantum meruit* counterclaim.

Under California law, "an action in quasi-contract . . . does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). However, at the pleading stage, a plaintiff may assert alternative, and even inconsistent, claims. Fed. R. Civ. P. 8(d). Applying this rule, "[s]ubstantial authority supports pleading legal and equitable contract claims in the alternative to one another, even when the factual predicate to the legal claims would defeat the equitable claims." *1 Energy Sols., Inc. v. Nicholas Holiday, Inc.*, No. CV-13-5000-MWF (Ex), 2013 WL 12133654, at *3 (C.D. Cal. Nov. 5, 2013). Nonetheless, a plaintiff must allege sufficient facts to state each claim for relief such that it is plausible on its face. *See Iqbal*, 556 U.S. at 678. Thus, "even though a plaintiff can allege multiple theories of recovery, to pursue a quantum meruit claim, a plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid." *Jacobs v. Sustainability Partners LLC*, No. 20-cv-01981-PJH, 2020 WL 5593200, at *17 (N.D. Cal. Sept. 18, 2020) (internal quotation marks omitted) (collecting cases).

Here, Eastern seeks to enforce its alleged contracts with Herbalife related to the BCDR project and, at the same time, brings a *quantum meruit* counterclaim to recover for the same goods and services that it provided to Herbalife under those contracts, in relation to the BCDR project. (Am. Countercl. ¶¶ 34–43, 58–66.) However, Eastern fails to allege any facts suggesting that its alleged contracts with Herbalife are unenforceable or invalid. Moreover, in its opposition brief, Eastern does not substantively respond to Herbalife's argument that such facts are required to state a quasi-contract claim when Eastern seeks to simultaneously maintain a breach of contract claim. (*See* Opp'n 8.) Rather, Eastern argues that, because Herbalife has taken the position that there is no enforceable contract between the parties, Eastern should be permitted to allege alternative theories. (*Id.*) "Although [Eastern] may

plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement," it must plead sufficient facts to support each of its claims. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389–90 (2012) (finding plaintiff could not pursue breach of contract and quasi-contract claims where plaintiff did not deny the existence or enforceability of the alleged agreement).

Because Eastern fails to allege any facts, even in the alternative, suggesting that its alleged contracts with Herbalife are unenforceable or invalid, the Court **GRANTS** Herbalife's Motion as to Eastern's *quantum meruit* counterclaim and **DISMISSES** this claim **with leave to amend**.

**D.  Conversion (Sixth Counterclaim)**

Finally, in its sixth counterclaim, Eastern alleges that Herbalife converted Eastern's confidential information by disclosing it to one of Eastern's competitors. (Am. Countercl. ¶¶ 67–71.) The Court previously dismissed Eastern's conversion counterclaim with leave to amend because Eastern failed to allege specific facts in support of its claim, including how Herbalife took Eastern's confidential information and the type of confidential information that Herbalife disclosed. (Order 10.) Eastern amended its conversion counterclaim to allege that Reed Haley, a Sourcing Analyst at Herbalife, improperly disclosed and distributed Eastern's confidential and proprietary property—including confidential pricing terms, profit margins, business plans, summaries, reports, pricing policies and methods, purchasing methods, vendor and business partner identities, and bids—to an account executive at Eastern's competitor, CDW. (Am. Countercl. ¶¶ 25, 68–69.) Herbalife moves to dismiss this claim on the basis that it is superseded by California's Uniform Trade Secret Act ("CUTSA") or, alternatively, because Eastern fails to allege that it has been deprived of its property. (Mot. 11–13.)

In California, conversion has three elements: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's

conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010). "[C]onversion traditionally required a taking of *tangible* property." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.21 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (emphasis in original). Although "[t]his restriction has been greatly eroded," *id.*, "'information' cannot be 'stolen' unless it constitutes *property*," and "information is not property unless some law makes it so," *id.* at 239 (emphasis in original). Moreover, "the expansion of conversion law to reach intangible property should not be permitted to 'displace other, more suitable law.'" *Id.* at 239 n.21.

CUTSA "provides for the civil recovery of 'actual loss' or other injury caused by the misappropriation of trade secrets." *SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012). CUTSA defines "trade secret" as information that "[d]erives independent economic value . . . from not being generally known," and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Applying CUTSA, the California Court of Appeal reasoned that "[i]nformation that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen." *Silvaco*, 184 Cal. App. 4th at 239 n.22. Moreover, "the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *SunPower*, 2012 WL 6160472, at *6.

Here, Eastern's conversion counterclaim is based on the alleged taking of Eastern's confidential information. (Am. Countercl. ¶¶ 67–71.) Eastern does not allege that the relevant information constitutes a trade secret. (*Id.*) Moreover, although Eastern asserts in a conclusory fashion that the confidential information is of a "proprietary nature," (*id.* ¶ 68), it does not allege any facts or positive law to support

that assertion. Thus, absent allegations indicating a property right in the confidential information conferred by positive law, Eastern's conversion counterclaim is superseded by CUTSA. *See SunPower*, 2012 WL 6160472, at \*6.

In addition, even if Eastern's conversion claim was not superseded by CUTSA, Eastern fails to allege sufficient facts indicating that it was wrongfully dispossessed of its confidential information or, alternatively, of its value. *See Hiossen, Inc. v. Kim*, No. CV 16-01579 SJO (MRWx), 2016 WL 10987365, at \*6 (C.D. Cal. Aug. 17, 2016) (finding plaintiff failed to state a claim for conversion where plaintiff failed to allege dispossession of value of converted information). Although Eastern alleges that "Haley, acting on behalf of Herbalife, improperly disclosed and distributed" the confidential information, (Am. Countercl. ¶ 69), Eastern does not allege that it was dispossessed of that information or its value. This is insufficient to state a claim for conversion.

In light of these deficiencies, the Court **GRANTS** Herbalife's Motion as to Eastern's conversion counterclaim and **DISMISSES** this claim **with leave to amend**. In its opposition brief, Eastern requests leave to proceed with a misappropriation of trade secret counterclaim in lieu of its conversion counterclaim. (Opp'n 9–10.) The Court **DENIES** Eastern's request because Eastern previously amended its conversion counterclaim and the request is now untimely, coming after the deadline to hear a motion to amend the pleadings in this matter. (*See id.*; *see also* Scheduling Order 24, ECF No. 28.)

///
///
///
///
///
///
///

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** in **PART** and **DENIES** in **PART** Herbalife's Motion to Dismiss, and provides **leave to amend** as described above. (ECF No. 39.) Amendment beyond the scope of that expressly granted herein will not be permitted. *Acri v. Int'l Ass'n. of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). If Eastern chooses to file a Second Amended Counterclaim, it shall do so within **twenty-one (21) days** of the date of this Order, in which case Herbalife shall answer or otherwise respond within **fourteen (14) days** of the filing. If Eastern fails to timely amend, then, as of the lapse of this deadline to amend, Eastern's counterclaims dismissed herein shall be deemed dismissed with prejudice.

**IT IS SO ORDERED.**

December 28, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**