**O**

# United States District Court
# Central District of California

| | |
|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC., | Case № 2:22-cv-00347-ODW (AGRx) |
| Plaintiff and Counter-Defendant, | **ORDER RE: MOTIONS FOR SUMMARY JUDGMENT [127] [133]** |
| v. | |
| EASTERN COMPUTER EXCHANGE, INC., | |
| Defendant and Counterclaimant. | |

## I.   INTRODUCTION

Herbalife International of America, Inc. and Eastern Computer Exchange, Inc. each bring suit against the other, alleging breach of the parties' agreements and equitable claims.   (Herbalife First Am. Compl. ("HC") ¶ 5, ECF No. 35; Eastern First Am. Countercl. ("ECC") ¶¶ 34–71, ECF No. 38.)  Both parties move for summary judgment. (*See* Eastern Mot. Summ. J. ("EMSJ"), ECF No. 127; Herbalife Mot. Summ. J. ("HMSJ"), ECF No. 133.)  For the reasons below, the Court **DENIES** Eastern's motion and **GRANTS IN PART and DENIES IN PART** Herbalife's motion.[1]

---

[1] Having carefully considered the papers filed in connection with the motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

Herbalife is a global nutrition company.  (HC ¶ 6.)  Eastern is a technology company that partners with original equipment manufacturers to resell equipment to end users like Herbalife for their business operating needs.  (*Id.* ¶ 13.)

### A.   Agreements

In early December 2019, Herbalife and Eastern entered into a Non-Disclosure Agreement ("NDA") in anticipation of Herbalife engaging Eastern's services.  (Decl. Scott E. Shapiro ISO EMSJ ("Shapiro Decl."), Ex. F ("HC"), Ex. 1 ("NDA"), ECF Nos. 130 (redacted), 131 (unredacted).)   Herbalife and Eastern then entered into a Master Services Agreement ("MSA"), wherein Eastern agreed to provide Herbalife professional services.  (Eastern SUF ("ESUF") 1, 11, ECF No. 129; Shapiro Decl. Ex. F, Ex. 2 ("MSA"), ECF Nos. 130 (redacted), 131 (unredacted).)  The "Services" are broadly described in the MSA's Schedule A as architecture, design, implementation, and project management for Herbalife's IT systems.  (ESUF 11.)  The MSA requires Eastern to perform the Services "in a conscientious and professional manner," "to the best of [its] ability," and in a "workmanlike manner."  (ESUF 2; MSA §§ 2, 5.)  Later, in June 2020, Herbalife and Eastern entered into an Enterprise License Agreement ("ELA"), for Herbalife's potential purchases of licenses and technology support through Eastern's licensing program.  (Herbalife SUF ("HSUF") 54, ECF No. 133-1.)[3]

### B.   Herbalife's Procurement Policies

In 2020 and 2021, Herbalife's procurement policies required a multi-part prior authorization before approval of any capital expenditure exceeding $200,000.

---

[2] The Court derives the factual background, some of which is disputed, from the parties' Statements of Uncontroverted Facts ("SUF"), Statements of Genuine Disputes and Additional Material Facts ("SGD" and "AMF"), and Responses thereto (collectively, the "Statements"), in addition to the parties' clearly and specifically cited evidence. *See* C.D. Cal. L.R. 56-1 to 56-4.

[3] The parties do not cite to a complete unredacted copy of the ELA, and the Court is unable to locate one in the voluminous evidence or the pleadings.  Therefore, the Court cites to the only ELA that the parties clearly identify, which consists of redacted excerpts in Herbalife's Compendium.  The Court pincites Herbalife's Compendium pagination for clarity.  (*See* Decl. Donald Brown ISO HMSJ ¶ 3, Ex. B ("E. Dep."), Ex. 5 ("ELA"), HMSJ Comp. 331–38, ECF No. 133-2.)

(HSUF 5.)  That process included approval of, first, a project authorization request ("PAR"), and then, a purchase requisition or purchase order ("PO") for specific purchases tied to the project.  (*Id.*)

Eastern disputes that it ever agreed to be bound by these procedures.  (Eastern SGD ("ESGD") & AMF ("EAMF") 5, ECF Nos. 146 (redacted), 147 (unredacted).) Eastern also contends that Herbalife did not consistently follow these policies and sometimes directed Eastern to provide goods or services first, before Herbalife's approval process was completed. (EAMF 149–52.)  Herbalife disputes these assertions. (Herbalife Resp. EAMF ("H. Resp. EAMF") 149–52, ECF Nos. 150 (redacted), 151 (unredacted).)

## C.  Business Continuity and Disaster Recovery Project

In April 2020, Herbalife retained Eastern to perform a risk-mitigation assessment of Herbalife's applications, known as an "application impact analysis," including those that supported Herbalife's business continuity and disaster recovery ("BCDR"). (ESUF 5, 12; HSUF 9–11.)

### 1.  *Proposals & Equipment Order*

Subsequently, Eastern sent Herbalife a proposed Scope of Work ("SOW") for a potential BCDR project intended to "modernize" Herbalife's IT systems.  (HSUF 9.) The proposal included implementing "Phase 1" of the BCDR project.  (*Id.*)  Eastern also sent Herbalife a proposed bill of materials for $10.5 million in Phase 1 equipment. (HSUF 13.)  Although the parties never executed the Phase 1 SOW or bill of materials, (HSUF 10, 12, 14), and Herbalife never issued any PAR, PR, or PO for any part of the BCDR project, (HSUF 16), Eastern contends that Herbalife awarded Eastern Phase 1 of the BCDR project in May 2020.  (EAMF 122.)  Herbalife disagrees. (H. Resp. EAMF 122.)

According to Eastern, at an October 28, 2020, in-person meeting, Herbalife VP Peter Bray instructed Eastern representatives Marty O'Brien and Brendan Lynch to order the BCDR equipment so that Herbalife would have it before the end of the year.

(EAMF 126–27.)  On October 30, 2020, Eastern ordered approximately $22 million of BCDR equipment from Dell Technologies for Herbalife (the "Equipment Order"). (HSUF 19; EAMF 128.)  Herbalife disputes that its representatives directed Eastern to order the equipment.  (H. Resp. EAMF 126–27.)

In November 2020, Eastern helped Herbalife draft a PAR for Herbalife board approval based on Eastern's proposals.  (Herbalife SGD ("HSGD") & AMF ("HAMF") 36, ECF No. 134-1.)  In December 2020, Eastern responded to Herbalife's request for proposal ("RFP") on Phase 2 of the BCDR project, proposing more than $40 million in services and equipment, including the equipment that Eastern had already ordered.  (HSUF 27–30; HAMF 38.)  In late January 2021, Eastern's Brendan Lynch sent Herbalife an "Offer Letter" and updated "proposal," for the entire BCDR project, offering to reduce Eastern's overall updated proposal fee.  (HSUF 34.)

On January 29, 2021, Herbalife informed Eastern the BCDR project was "on hold from top management."  (HSUF 41.)

### 2. Deloitte Review

In February 2021, Herbalife retained Deloitte Consulting to review Eastern's overall BCDR proposal.  (HSUF 45; HAMF 43–44.)  The Deloitte review cost Herbalife $300,000.  (ESUF 17; HAMF 44.)  Deloitte advised Herbalife that "alternative solutions" to Eastern's BCDR proposal were available and "should be considered."  (HSUF 46.)  Later in 2021, Herbalife hired Deloitte again, at a cost of $450,000, to explore and propose those alternative solutions.  (HSUF 47; HAMF 45.) To date, Herbalife has not implemented any BCDR plans.  (EAMF 190; ESUF 28.)

### 3. Dell Technologies

On February 23, 2021, in response to Dell's requests for confirmation of the BCDR Equipment Order, Eastern sent Dell an apparent Herbalife purchase order reflecting the October 2020 Equipment Order.  (HAMF 46; Decl. Donald Brown ISO Opp'n EMSJ ("Brown Decl. Opp'n EMSJ") ¶ 11, Ex. J ("E. Dep.") 170:15, Ex. 19, ECF No. 134-2.)  The February 23, 2021 PO is unsigned and lists the price of every

item as "1.00." (*Id.*)  Between July 13, 2021, and July 22, 2021, Dell corresponded directly with Herbalife regarding the Equipment Order, and Herbalife opened an investigation into the Equipment Order and the February 23, 2021 PO.  (HAMF 49; Brown Decl. Opp'n EMSJ ¶ 17, Ex. P ("Dell Email Chain"), ECF No. 134-2.)

On July 27, 2021, Dell and Eastern entered into a settlement agreement in which Dell agreed to accept the return of the equipment Eastern had ordered and refunded the purchase price to Eastern.  (HSUF 26.)  Eastern sent Herbalife a bill for $57 million that included a charge for the Equipment Order.  (HAMF 53.)

**D.    MSA Termination & Improper Disclosures**

On January 14, 2022, Herbalife notified Eastern in writing that Herbalife was terminating the MSA.  (HAMF 54.)  Herbalife later learned, and Eastern does not dispute, that Eastern improperly disclosed one of Herbalife's confidential Deloitte reports to Dell.  (HAMF 56.)  Similarly, Eastern asserts that an Herbalife employee improperly disclosed Eastern's pricing information to a competitor, but Herbalife disputes this.  (EAMF 69; H. Resp. EAMF 69.)

**E.    This Lawsuit**

On January 17, 2022, Herbalife initiated this lawsuit against Eastern.  (Compl., ECF No. 1.)   Herbalife asserts that Eastern breached the MSA and NDA, and fraudulently concealed the Equipment Order.  (HC ¶¶ 57–77.)  Eastern counterclaims and asserts that Herbalife breached verbal agreements for the BCDR project and Equipment Order, breached the MSA, NDA, and ELA, and in the alternative to the contract claims, asserts that Herbalife should be estopped from breaking its promises. (ECC ¶¶ 34–50.)[4]

On March 13, 2023, the parties filed cross motions for summary judgment. (Herbalife First Mot. Summ. J., ECF No. 79; Eastern First Mot. Summ. J., ECF No. 82.) Due to the noncompliant and unmanageable filings, the Court struck the motions.

---

[4] These are the claims and counterclaims surviving at the time of the motions for summary judgment. (*See* Order Pl.'s Mot. Dismiss, ECF No. 52; Order Granting Stip. Dismiss, ECF No. 74.)

1  (Order Striking, ECF No. 105 ("Plaintiffs dump this heaping mess outside of chambers
2  and leave the Court to muddle through their briefs' dreamlike associations." (quoting
3  *Premier Constr. & Remode, Inc. v. Mesa Underwriters Special Ins. Co.*, No. 5:18-cv-
4  02852-JGB (KKx), 2020 WL 5498072, at *2 (C.D. Cal. July 8, 2020)).)  Only after the
5  parties substantially complied with the Court's directive to coordinate their applications
6  to file materials under seal did the Court permit the present motions.  (Order Granting
7  Am. Joint Appl. Seal & Setting Briefing, ECF No. 126.)

8       The parties have now refiled their motions for summary judgment, Statements,
9  and compendia of evidence.  In light of the still-voluminous filings, and the specific
10 history concerning the parties' submissions related to the summary judgment motions,
11 the Court directed the parties to confirm the relevant filings for the Court's
12 consideration.  (*See* Mins., ECF No. 172; Joint Report, ECF No. 173.)[5]  Thus, the Court
13 may now turn to resolving the cross motions for summary judgment.

## III.  EVIDENTIARY OBJECTIONS

15      Herbalife objects to portions of Eastern's opposition evidence.  (*See* Herbalife
16 Evid. Objs. ISO HMSJ, ECF No. 149.)  Much of the material to which Herbalife objects
17 is unnecessary to the resolution of the motions and the Court need not resolve those
18 objections.  For similar reasons, relevance- and foundation-based objections are moot
19 in the context of summary judgment motions.  *Burch v. Regents of Univ. of Cal.*, 433 F.
20 Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Moreover, the Court does not consider improper
21 argument and legal conclusions in the parties' Statements, (*see* Scheduling & Case
22 Management Order ("Scheduling Order") 7–9, ECF No. 28), so Herbalife's objections
23 on that basis are also moot.  As for hearsay, a court may not *grant* a summary judgment

---

[5] For the sake of clarity, the Court considers the following submissions in resolving the cross motions, as confirmed by the parties' Joint Report: Eastern motion papers, ECF Nos. 127–32; Herbalife opposition papers, ECF No. 134; Eastern reply papers, ECF Nos. 143–45; Herbalife motion papers, ECF No. 133; Eastern opposition papers, ECF Nos. 135, 138–39, 146–47; Herbalife reply papers, ECF No. 148–51.  (*See* Joint Report.)  Each ECF listed here includes all sub-filings within that docket entry. The Court does *not* consider evidence or argument from the prior motion submissions, despite the parties' repeated citations thereto.  Those submissions have been stricken from the record and provide no support for the current motions.

motion on the basis of hearsay evidence, but it may *deny* a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence *would be admissible* at trial.  Fed. R. Civ. P. 56(e); *Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).  Finally, to the extent the Court relies on objected-to evidence in this order without further discussion, those objections have been thoroughly considered and are overruled.  *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary evidentiary rulings).

## IV.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *See id.* at 324; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party."  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted).  Provided the moving party has satisfied its burden, the court should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party, without making credibility determinations or weighing conflicting evidence. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Thus, when parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006). The court considers each party's cited evidence, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The nonmoving party must provide more than a "scintilla" of contradictory evidence to survive summary judgment. *Anderson*, 477 U.S. at 251–52; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## V.   EASTERN'S MOTION

The Court begins with Eastern's motion before turning to Herbalife's motion below. Eastern moves for summary judgment on Herbalife's causes of action for breach of contract and fraudulent concealment. (*See generally* EMSJ 2, 9–15.)

### A.   Breach of Contract—MSA & NDA

Herbalife asserts that Eastern breached the MSA by failing to provide services in a professional and workmanlike manner because, among other things, Herbalife

retained Eastern to provide an assessment of Herbalife's BCDR applications, but Eastern instead developed an over-budget proposal for a BCDR system that overlooked alternatives more suited to Herbalife's objectives, and then aggressively pressured Herbalife to approve and implement Eastern's BCDR proposal.  (Herbalife Opp'n ("H. Opp'n") 3–4, ECF No. 134; *see also* HC ¶¶ 72–77.)  Herbalife also contends that Eastern breached the MSA by refusing to permit Herbalife to audit Eastern's books and records, and that Eastern breached the MSA and NDA by disclosing a confidential Deloitte report.  (H. Opp'n 8–9.)

Eastern moves for summary judgment on Herbalife's breach of contract cause of action on the grounds that Herbalife has no recoverable contract damages.  (EMSJ 2.)  Under California law,[6] to prove a cause of action for breach of contract, the plaintiff must prove damages resulting from the breach.  *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### 1.    NDA

Eastern argues Herbalife cannot prove damages resulting from the breach of the NDA because Herbalife's economic damages expert does not mention monetary harm attributable to that breach.  (EMSJ 11.)  However, Herbalife does not seek compensatory damages on its NDA claim.  (H. Opp'n 9.)  Rather, Herbalife seeks injunctive relief and specific performance.  (HC, Prayer for Relief ¶ 1.)  The NDA expressly authorizes a non-breaching party to pursue injunctive relief "without needing to prove damages."  (NDA § 8; HAMF 55.)  As such, Eastern's NDA argument fails.

### 2.    MSA

As to the MSA, Eastern first contends that Herbalife has no damages resulting from the breach of the MSA because: (1) Herbalife lacked any BCDR capabilities; (2) the design Eastern proposed met Herbalife's objectives; and (3) Herbalife cannot recover under the MSA simply because it "chang[ed] its mind" about the goals of the project.  (EMSJ 12–13.)  Herbalife disputes each of these points and argues the fees

---

[6] The MSA and NDA are governed by California law.  (MSA § 12; NDA § 10.)

paid to Deloitte, to review Eastern's proposal and develop appropriate alternative designs, constitute recoverable contract damages resulting from Eastern's breach. (H. Opp'n 3–5.)

Eastern's moving arguments address performance or causation, not damages. Regardless, however, they raise a host of disputed material facts, including whether: (1) Herbalife had any BCDR capabilities, (*see* ESUF 23; HSGD 23 (disputed)); (2) Eastern's proposal met Herbalife's BCDR objectives, (*see* ESUF 20, 27; HSGD 20, 27 (disputed)); and (3) Eastern's proposal adequately considered relevant alternatives, (*see* ESUF 13, 20; HSDG 20 (disputed); HAMF 43). As such, even assuming Eastern has made a preliminary showing on this point—which the Court does not find— Herbalife raises ample genuine disputes of material fact. Drawing all reasonable inferences in favor of Herbalife as the nonmoving party, *Scott*, 550 U.S. at 378, a reasonable jury could find in favor of Herbalife on Eastern's arguments, *Anderson*, 477 U.S. at 248. Therefore, summary judgment is not appropriate on this basis.

Next, Eastern contends section 4(C) of the MSA limits Herbalife's remedies and excludes the cost of the Deloitte reviews as contract damages. (EMSJ 11–12.)

Contract interpretation is a matter of law where it does not rely on inadmissible extrinsic evidence. *Am. Alt. Ins. Corp. v. Superior Ct.*, 135 Cal. App. 4th 1239, 1245 (2006). Where "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Id.* Contracting parties may limit the available remedies in the event of a breach. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 992–93 (2004). However, unless the contract clearly indicates that the specified remedies are exclusive, "the injured party may seek any other remedy provided by law." *McDonald v. Stockton Met. Transit Dist.*, 36 Cal. App. 3d 436, 442 (1973); *see also Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 226 Cal. App. 3d 442, 454 (1990) ("The rules of law governing the recovery of damages for breach of contract are very flexible.").

Section 4(C) of the MSA is part of the "Term and Termination" clause, and provides, "In the event that [Eastern] fails to provide the Services hereunder, [Eastern] shall provide Herbalife with a full refund of *any deposits or prepayments* made by Herbalife, *plus any financial penalties* incurred by Herbalife due to such cancellation." (MSA § 4(C) (emphasis added).)   Eastern argues this provision limits Herbalife to recover only these "very specific and limited remedies."  (EMSJ 12.)

Eastern is mistaken.  Nothing in section 4(C) suggests it is intended to limit Herbalife's remedies in the event of Eastern's breach.  Rather than taking any remedies off the table, it affirmatively requires Eastern to refund certain types of prepayments and cover any consequent penalties.  No language expressly or impliedly makes this remedy exclusive, and Herbalife may therefore seek "any other remedy provided by law."  *Aquamen Ent. LLC v. Pigmental, LLC*, No. 2:17-cv-58-GW (GJSx), 2017 WL 7806619, at *7 (C.D. Cal. May 8, 2017) (quoting *McDonald*, 36 Cal. App. 3d at 442). As such, Eastern's argument that section 4(C) of the MSA limits Herbalife's contract damages fails.

Accordingly, Eastern is not entitled to summary judgment on Herbalife's breach of contract cause of action for either the NDA or MSA.

**B.    Fraudulent Concealment**

Herbalife alleges that Eastern fraudulently concealed the Equipment Order from Herbalife, and Herbalife would not have retained Deloitte to review Eastern's BCDR proposal if Herbalife had known that Eastern already placed the order.  (HC ¶¶ 57–71; H. Opp'n 13; HAMF 51.)   Eastern argues the economic loss rule bars the cause of action.  (EMSJ 14–15.)[7]

---

[7] Eastern also makes a passing comment that this cause of action fails because Herbalife cannot prove reliance or damages.  (EMSJ 15 ("[D]espite never being able to produce evidence of justifiable reliance or even detrimental reliance, Herbalife cannot escape the fact it has no damages.").)  The Court "decline[s] to address this undeveloped argument, which is not supported by citations to the record, argument, or any legal authority."  *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014); *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

Fraudulent concealment is an intentional tort.  *Nissan Motor Acceptance Cases*, 63 Cal. App. 5th 793, 829 (2021).  "The economic loss rule generally bars tort claims for contract breaches, thereby limiting contracting parties to contract damages."  *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009).  In cases concerning a breach of contract, limiting the recovery to breach of contract damages "makes it easier for parties to 'estimate in advance the financial risks of their enterprise.'"  *Id.* (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 106 (1995)).  Consequently, "the rule is particularly strong when a party alleges 'commercial activities that negligently or inadvertently [went] awry.'"  *Id.* (quoting *Robinson*, 34 Cal. 4th at 991 n.7) (alteration in original).

However, an exception applies where commercial activities go awry as a consequence of conduct that is intentional or beyond the contract.  *See Robinson*, 34 Cal. 4th at 988.  A harm goes "above and beyond" the contract, and thus becomes tortious, "when it also violates a duty independent of the contract arising from principles of tort law."  *Id.* at 989; *see also Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ("An omission to perform a contract obligation is never a tort, *unless that omission is also an omission of a legal duty*." (emphasis added)).  For instance, "when one party commits a fraud during the contract formation or performance, the injured party may recover in contract *and tort*."  *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993) (emphasis added).  This is because "[n]o rational party would enter into a contract anticipating that they are or will be lied to."  *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 840 (2022) (quoting *Robinson*, 34 Cal. 4th at 993).

Here, Herbalife asserts that the duty and conduct involved in Eastern's alleged fraudulent concealment of the Equipment Order are separate from those involved in Eastern's alleged breach of the MSA.  (H. Opp'n 10.)  Herbalife contends Eastern breached the MSA by proposing a BCDR design that was unreasonably overbudget and failed to consider more suitable alternatives.  (*Id.* at 12.)  Herbalife claims it was harmed by the contract breach because it had to retain Deloitte to review Eastern's overbudget

design.  (*Id.*; HAMF 44–45.)  The duty and conduct involved in the alleged breach of the MSA thus revolve around Eastern's contractual obligation to provide services in a professional and workmanlike manner.

In contrast, Herbalife contends that Eastern ordered the BCDR equipment without authorization and then fraudulently concealed the order by continuing to negotiate and support the BCDR project proposal as if the Equipment Order had not already been placed.  (H. Opp'n 10–12.)  Herbalife claims it was harmed by Eastern's concealment because Herbalife only retained Deloitte to review Eastern's BCDR proposal in reliance on Eastern acting as if it was still in the negotiating and proposal phase.  (*Id.*)  Herbalife asserts it never would have retained Deloitte to review Eastern's design had it known Eastern already ordered $22 million in equipment.  (*Id.*)  The duty and conduct involved in the alleged fraudulent concealment thus revolve around Eastern's duty to disclose the allegedly unauthorized Equipment Order.  *See Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014) (noting that a cause of action for fraudulent concealment requires the defendant to have concealed a material fact *it is was under a duty to disclose* to the plaintiff).

Many of the facts underlying these arguments are disputed and clearly material, as relevant here, to the fraudulent concealment claim.  For instance, Herbalife raises material disputes regarding whether the Equipment Order was unauthorized, (HAMF 34, 42), whether Eastern concealed the Equipment Order by continuing to negotiate and support the presentation to Herbalife's board, (HAMF 34, 36–41), and whether Herbalife would not have retained Deloitte to review Eastern's proposal had it known that Eastern ordered the equipment, (HAMF 51).  Making no credibility determinations, the Court finds that Herbalife submits sufficient evidence in support of these factual disputes such that they may reasonably be resolved in favor of either party. Accordingly, drawing all reasonable inferences in Herbalife's favor as the nonmoving party, *Scott*, 550 U.S. at 378, a reasonable jury could find that Eastern "violate[d] a duty

independent of the contract arising from principles of tort law," *Robinson*, 34 Cal. 4th at 989, specifically the duty to disclose the Equipment Order to Herbalife.

Eastern argues that the fraudulent conduct exception to the economic loss rule does not apply here because the California Supreme Court in *Robinson* held that only *affirmative* fraudulent misrepresentations are excepted, and Herbalife asserts fraudulent *omissions* and *concealment*.  (EMSJ 14–15.)  Eastern is correct that the California Supreme Court held only that the economic loss doctrine did not prohibit recovering for purely economic injury due to affirmative fraudulent misrepresentations.  *Robinson*, 34 Cal. 4th at 991–92.  The court in *Robinson* found the affirmative misrepresentations sufficient to resolve the issue before it, and therefore the court explicitly did not consider whether fraudulent concealment was also excepted from the bar of the economic loss rule.  *Id.* ("Because Dana's affirmative intentional misrepresentations of fact . . . are dispositive . . . , we need not address the issue of whether Dana's intentional concealment constitutes an independent tort.").

Following *Robinson*, courts have widely diverged on whether fraudulent omission or concealment is excepted from the economic loss rule.  *See Dhital*, 84 Cal. App. 5th at 843 ("We acknowledge the differing views taken by courts that have considered this issue.") (collecting cases).  "To date, '[t]here is no controlling state precedent' indicating 'whether fraudulent concealment claims are exempted from the economic loss rule.'"  *Kroutilin v. FCA US, LLC*, No. 8:22-cv-00929-FWS (DFMx), 2022 WL 18278602, at *4 (C.D. Cal. Dec. 7, 2022) (quoting *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1992 (9th Cir. 2021)).  The Ninth Circuit certified the question to the California Supreme Court, which granted the request; the question remains pending.  *See Rattagan*, 19 F.4th at 1992; *Rattagan v. Uber Techs., Inc.*, No. S272113, 2022 Cal. LEXIS 490 (Cal. Sup. Ct. Feb. 9, 2022).  However, the California Court of Appeal,[8]

---

[8] "When interpreting state law, federal courts are bound by decisions of the state's highest court." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018).  "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions . . . ." *Id.*

recently addressed the issue in *Dhital*, 84 Cal. App. 5th at 843, and reasoned that the rationale in *Robinson* supporting an exception for *affirmative* fraudulent misrepresentations applied equally to fraudulent *inducement* by *concealment*.

The reasons supporting *Robinson's* holding excepting affirmative misrepresentations from the economic loss bar, and *Dhital's* holding excepting fraudulent inducement from the economic loss bar, also support excepting fraudulent concealment and omissions made during performance of a contract from the economic loss bar. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1022 (N.D. Cal. 2020) (holding that *Robinson's* "reasoning compels finding that recovery for fraudulent omissions is not barred by the economic loss rule"). The Court finds "no principled reason . . . for distinguishing between the two types of intentional misrepresentations." *Id.* at 1020. "[A] fraudulent omission is, by its nature, just as deceptive as a fraudulent affirmative misrepresentation." *Id.* (citing *Robinson*, 34 Cal. 4th at 992). Fraudulent concealment constitutes conduct independent of contract performance, and causes harm "above and beyond" the breach of contract because "it also violates a duty independent of the contract arising from principles of tort law." *See Robinson*, 34 Cal. 4th at 989.

The Court finds that Herbalife raises genuine disputes of material fact regarding whether Eastern committed fraud by concealment "above and beyond" any contractual breach. *See id.* Accordingly, Herbalife's cause of action for fraudulent concealment is not foreclosed by the economic loss rule and Eastern is not entitled to summary judgment on this cause of action.

## C.    Conclusion—Eastern's Motion

For the reasons discussed above, the Court **DENIES** Eastern's Motion for Summary Judgment in its entirety. (ECF No. 127.)

## VI.    HERBALIFE'S MOTION

As the Court turns to Herbalife's motion, the burdens and inferences applied on summary judgment are reversed. *See Celotex*, 477 U.S. at 322–23 (burden on moving party); *Scott*, 550 U.S. at 378 (reasonable inferences for nonmoving party).

Herbalife moves for summary judgment on Eastern's causes of action for breach
of verbal BCDR agreements, breach of the MSA, NDA, and ELA, and promissory
estoppel.  (HMSJ 1–2.)

**A.    Verbal BCDR Agreements**

Eastern alleges that Herbalife breached verbal agreements to award Eastern the
BCDR project and pay for BCDR equipment that Herbalife executives directed Eastern
to order.  (ECC ¶¶ 34–39.)  Herbalife moves for summary judgment on this cause of
action on several grounds: lack of mutual assent, statute of frauds, Eastern's material
breach, Eastern's repudiation, and Eastern's failure to mitigate damages.  (HMSJ 6–13.)
After reviewing the parties' arguments, Statements, and relevant evidence, the Court
finds genuine factual disputes exist as to each of these grounds, with the exception of
the statute of frauds, which bars the alleged verbal agreements here.  Consequently,
Herbalife is entitled to summary judgment on this cause of action and the Court does
not address Herbalife's additional arguments.

In California, the statute of frauds provides that a contract for the sale of goods
valued over $500 is unenforceable unless there is some writing "sufficient to indicate
that a contract for sale has been made between the parties and signed by the party against
whom enforcement is sought."  Cal. Comm. Code § 2201(1); *Virgin Scent, Inc. v. BT
Supplies W., Inc.*, 615 F. Supp. 3d 1118, 1132 (C.D. Cal. 2022).  The writing "functions
only as evidence of the contract and need not contain every term."  *Kerner v. Hughes
Tool Co.*, 56 Cal. App. 3d 924, 934 (1976).

Eastern does not dispute that the verbal agreements alleged are for goods valued
over $500.[9]  (*See generally* E. Opp'n 11–12.)  Rather, Eastern argues the statute of
frauds does not bar its verbal contract claim because (1) the MSA serves as the required

---

[9] In its reply, Herbalife addresses the issue of whether the verbal agreements alleged concern both
goods and services.  (*See* Herbalife Reply 7–8, ECF No. 148 (citing Eastern Opp'n ("E. Opp'n") 7,
ECF No. 135).)  However, the Court does not find that Eastern raised this argument in its opposition.
To the contrary, Eastern specifies that "a reasonable jury could find . . . a separate oral agreement
existed *as to the ordered goods*."  (E. Opp'n 7 (emphasis added).)  Thus, the Court finds that Eastern
does not dispute that the verbal agreements alleged are for goods.

writing;  (2) the  BCDR  equipment  was  specially  manufactured  and  therefore  the agreement is exempt from the statute of frauds; and (3) Herbalife is estopped from asserting the statute of frauds.  (*Id.*)

Eastern first argues: "The MSA is a written agreement, which if determined to be the written agreement for the [Equipment Order] takes the matter outside the Statute of Frauds." (*Id.* at 11.)  This is the entirety of Eastern's position on the point.  Eastern cites no law or evidence supporting this "argument," and fails to explain how the MSA separately supports both the breach of verbal agreements claim and the breach of written contracts claim.  The Court declines to develop Eastern's argument on its behalf. *Ventress*, 747 F.3d at 723; *Graf*, 610 F.3d at 1166.  Consequently, Eastern fails to establish that the MSA removes the verbal agreements from the statute of frauds.

Eastern's second argument is not much more developed, but it does cite California Commercial Code section 2201(3)(a).  (E. Opp'n 11.)  That provision provides  an  exception  to  the  statute  of  frauds  when  the  goods  are  "specially manufactured" for the buyer, are not suitable for resale in the ordinary course of the seller's business, and the seller has made "commitments for their procurement" before repudiation and "under circumstances which reasonably indicate that the goods are for the buyer."  Cal. Comm. Code § 2201(3)(a).  This exception to the statute of frauds does not  help  Eastern.   Again,  Eastern  cites  no  facts  or  evidence  supporting  that  the equipment was "specially manufactured" and "not suitable for resale." (*See generally* E. Opp'n 11.)  To the contrary, the undisputed facts establish that Eastern was able to return the equipment to Dell for a refund of the purchase price.  (HSUF 26.)  This suggests the equipment could be resold and is therefore not subject to the "specially manufactured" exception.

Finally, Eastern argues Herbalife should be estopped from asserting the statute of frauds because "Eastern detrimentally relied on Herbalife's promises," and "Herbalife accepted the benefits of Eastern's implementation work as to Phase 2" of the BCDR project.  (E. Opp'n 11–12.)  Estoppel can prevent a party from relying on the statute of

frauds to avoid an agreement where "an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract," or "unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." *Virgin Scent*, 615 F. Supp. 3d at 1134 (quoting *Chavez v. Indymac Mortg. Servs.*, 219 Cal. App. 4th 1052, 1058 (2013)).

As with the arguments above, Eastern also does not develop its statute of frauds estoppel argument. For instance, Eastern does not describe what "unconscionable injury" it will suffer if the Court denies enforcement, how Herbalife will be "unjustly enriched" by "Eastern's implementation work as to Phase 2," or what that "implementation work" entailed. (*See generally* E. Opp'n 11–12.) Absent a scintilla of this information or evidence to support it, Eastern fails to establish that Herbalife should be estopped from relying on the statute of frauds to avoid the alleged verbal agreements.

In conclusion, Herbalife establishes that the statute of frauds bars Eastern's cause of action for breach of verbal agreements, and Eastern fails to raise a genuine issue of material fact or law in dispute. Drawing all reasonable inferences in favor of Eastern as the nonmoving party, *Scott*, 550 U.S. at 378, no reasonable jury could find in favor of Eastern here, *Anderson*, 477 U.S. at 248. Accordingly, Herbalife is entitled to summary judgment as a matter of law on Eastern's first cause of action, for breach of verbal agreements.

**B.     Breach of Contract—MSA, NDA, ELA**

To prevail on a claim for breach of written contract, the plaintiff must prove the "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1017 (C.D. Cal. 2013) (quoting *Oasis W. Realty*, 51 Cal. 4th at 821). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible," Cal. Civ. Code § 1639, and "[t]he words of a contract are to be

understood in their ordinary and popular sense," unless used in a legal, technical, or special sense, *id.* § 1644. "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006). However, "if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." *Id.*

 "[A] contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Id.* at 209. "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Id.* (alteration in original). A contract will not be enforced where it is "so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained." *Id.*

### 1.     MSA

Eastern alleges that Herbalife breached section three of the MSA by failing to pay for Eastern's BCDR project services and Equipment Order, and by not moving forward with the BCDR project. (*See* ECC ¶ 42(c); E. Opp'n 2–8.) Herbalife moves for summary judgment on this claim on several grounds: (a) the MSA creates no obligations for Herbalife on the BCDR project, (b–c) Eastern materially breached and repudiated the MSA, (d) and Eastern failed to mitigate its damages. (HMSJ 6–13.)

It is undisputed that the parties entered into the MSA. (HSUF 1.) As such, the Court must determine whether the material particulars are sufficiently definite as a matter of law that the Court may enforce them. As relevant here, section three of the MSA provides:

> 3.      Billing and Payment.
> As full compensation for the Services, Herbalife agrees to pay Contractor the Fees set forth on <u>Schedule A</u>. If Contractor is able to perform the Services for less than the Fees set forth on <u>Schedule A</u> the Fees shall be

reduced accordingly.  Contractor's Fees may not be increased above the amount set forth on <u>Schedule A</u> without Herbalife's express written consent.

(MSA § 3.)  From this provision, the Court can ascertain that Herbalife agreed to pay Eastern the fees set forth in Schedule A in exchange for Eastern's provision of certain "Services."  However, things fall apart for Eastern when the Court turns to "Schedule A," because it does not "set forth" any discernable particular "Fees" or clarify that the "Services" related to BCDR.  (*See generally* MSA, Schedule A §§ 1–5.)

Schedule A begins with "1. Description of Services," which lists two categories of services: "Engineering Technical," and "Program/Project Management."  (*Id.* § 1.) These categories contain a number of broad groupings with general descriptions of the services to be provided.  (*Id.*)  While the Court does not doubt that Eastern's listed services would provide value, it cannot say with certainty, based on the express terms of the MSA, that the MSA or Schedule A pertains specifically to services related to the BCDR project.  And even if it did, Schedule A does not specify what fees Herbalife is obligated to pay.  The only term pertaining to fees in Schedule A states:

3.    Contractor's Fees.

Custom Services are addressed via documented Scope of Work (SOW) per Services Engagement.  Each Scope of Work is created to align to mutually agreed Herbalife's desired Scope, Deliverables, Timelines, and Budget. Eastern's standard payment terms are Net 30.

(*Id.* § 3.)  The plain language of this provision requires a separate documented Scope of Work or Services Engagement to determine Contractor's Fees, but Herbalife establishes—and Eastern fails to effectively dispute—that no such separate authorization was ever executed.

On April 8, 2020, Eastern sent Herbalife a proposed SOW for Phase 1 BCDR project services.  (HSUF 9 (undisputed).)  The proposal was good for thirty days and would become binding if Herbalife executed it during that time.   (HSUF 10 (undisputed).)  It stated that any purchases made thereunder would be governed by "a separate master agreement or other purchase agreement that will be negotiated and

signed between the parties." (HSUF 11 (undisputed).) However, the proposed SOW was never executed by Herbalife, (HSUF 12 (effectively undisputed)),[10] and Eastern does not submit any "separate master agreement or other purchase agreement" that was negotiated and signed in relation to the proposed SOW. Similarly, Herbalife never signed Eastern's proposed bill of materials for BCDR equipment. (HSUF 13 (undisputed), 14 (effectively undisputed)). And Herbalife submits evidence that it never sent Eastern any writing authorizing the Equipment Order. (HSUF 22 (effectively undisputed).) In sum, the plain language of the MSA Schedule A requires a separate engagement to determine Herbalife's obligation to pay Eastern fees, but Herbalife establishes—and Eastern fails to materially dispute—that no separate written engagement for the BCDR project was ever executed.

Finally, to the extent that Eastern argues the parties amended the MSA through subsequent conduct, (*see* E. Opp'n 3, 5–7), the MSA expressly requires a signed writing for any amendment or modification, (MSA § 16). As neither party submits such a written, signed amendment, the Court concludes based on the present record that the MSA must stand alone. And standing alone, the MSA is not sufficiently certain or definite with respect to services to be provided or fees to be paid for the Court to conclude it pertains to the BCDR project or Equipment Order. *See Bustamante*, 141 Cal. App. 4th at 209. Accordingly, Eastern's cause of action for breach of the MSA must fail as a matter of law.[11]

---

[10] The Court disregards the improper legal argument and conclusions in Eastern's statement of dispute, which in any event do not materially respond to Herbalife's statement of fact. (*Compare* HSUF 12, *with* ESGD 12.) The Court also declines to excavate Eastern's undifferentiated evidence to unearth a reason to deny summary judgment on this cause of action. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (requiring that counsel lay out their support clearly); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."). Accordingly, the Court considers this fact, and other facts with similarly presented "disputes," effectively undisputed.

[11] As Eastern's breach of MSA claim fails for this reason, the Court does not reach Herbalife's remaining arguments or its motion for partial summary judgment on specified damages on this claim.

1    Drawing all reasonable inferences in Eastern's favor as the nonmoving party,

2    *Scott*, 550 U.S. at 378, no reasonable jury could find in favor of Eastern here, *Anderson*,

3    477 U.S. at 248.  Accordingly, Herbalife is entitled to summary judgment as a matter of

4    law on Eastern's claim for breach of the MSA.

5        *2.    NDA*

6    Eastern alleges that Herbalife breached the NDA by disclosing Eastern's

7    confidential BCDR project bids to a competitor.   (ECC ¶ 42(b); E. Opp'n 8–10.)

8    Herbalife moves for summary judgment on this claim on the grounds that the NDA

9    protects only Herbalife's confidential information, not Eastern's.  (HMSJ 15.)

10   As above, the Court considers the plain meaning of the NDA's clear and explicit

11   language in its ordinary and popular sense and strives to ascertain the parties' intent

12   from the writing alone.  *Am. Alt. Ins. Corp.*, 135 Cal. App. 4th at 1245; Cal. Civ. Code

13   §§ 1639, 1644.

14   The parties entered into the NDA, entitled "Mutual Non-Disclosure Agreement,"

15   because they found "it may be necessary for Herbalife (the 'Disclosing Party') to

16   disclose or make available certain Confidential Information" to the "Receiving Party in

17   connection with the Services."   (NDA §§ 1, 2; HSUF 51.)   The NDA defines

18   "Confidential Information" as "Confidential Information of the Disclosing Party," and

19   as "any nonpublic, confidential or proprietary information that the Disclosing Party . . .

20   make[s] available to the Receiving Party in connection with the Services."  (NDA § 2;

21   HSUF 52.)   The Receiving Party agrees not to use, copy, distribute, or disclose the

22   Confidential Information, to which the Disclosing Party owns all rights and interest.

23   (NDA § 5.)  These provisions indicate that *only* the Disclosing Party's information is

24   protected as Confidential Information.

25   The NDA defines "Disclosing Party" exclusively as Herbalife.  (NDA § 1;

26   HSUF 53 (effectively undisputed).)   The NDA does not define Eastern or its

27   relationship to the NDA; it also does not define "Receiving Party."  (*See generally*

28   NDA.)  However, in light of Herbalife's defined role as "Disclosing Party," and the

defined protections for the "Confidential Information," the plain language of the NDA does not support a reasonable reading that would also make Herbalife the "Receiving Party." (*Id.* §§ 1, 2.)  Thus, the NDA expressly protects only Herbalife's confidential information.

Eastern argues the parties intended the NDA to be mutually binding, and points to three provisions it contends support this mutual intent: (1) the heading, "Mutual Non-Disclosure Agreement"; (2) the "Term" section, which provides when the obligations of the "Parties" terminate; and (3) the "Remedies" section, which defines the remedies to which a "non-breaching party" will be entitled in the event a "party" breaches the NDA.  (H. Opp'n 8–10 (referencing NDA §§ 6, 8).)  However, these general references do not vitiate the NDA's express definitions, of Herbalife as the "Disclosing Party," and of "Confidential Information" as information the Disclosing Party, i.e., Herbalife, discloses.  Nor do they undermine the NDA's clear directive that the defined "Confidential Information," i.e., the "nonpublic, confidential or proprietary information" that Herbalife makes available, is not to be used, copied, distributed, or disclosed.  Contrary to Eastern's urging, the Court will not "reform" the NDA to replace "Herbalife" as the Disclosing Party with "'a party' or words to that effect." (*See* H. Opp'n 9–10.)

The clear and explicit language of the NDA establishes that it protects Herbalife's confidential information, and Eastern fails to raise a genuine issue of fact or law in dispute.  Accordingly, drawing all reasonable inferences in Eastern's favor as the nonmoving party, *Scott*, 550 U.S. at 378, the Court finds that Herbalife is entitled to summary judgment as a matter of law on Eastern's claim for breach of the NDA.

### 3. ELA

Eastern alleges that Herbalife breached the ELA by failing to pay for licenses and tokens related to the BCDR project.  (ECC ¶ 42(a).)  Herbalife moves for summary judgment on this claim on the grounds that the ELA does not obligate Herbalife purchase the licenses or tokens from Eastern, and it never did so.  (HMSJ 15–16.)

In its opposition brief, Eastern includes a section heading that mentions the ELA, but does not include any argument, analysis, law, or evidence. (*See* E. Opp'n 10 (listing subheading including "The ELA" followed by blank lines).)  Accordingly, the Court finds Eastern has waived or abandoned this claim.  *See Am. Int'l Enters., Inc. v. FDIC*, 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned."); *Graf*, 610 F.3d at 1166 ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

The Court has reviewed the evidence and finds that Herbalife establishes the ELA imposes no obligation on it to purchase tokens or licenses.  *See* Fed. R. Civ. P. 56(e)(3). Specifically, the ELA specifies that Eastern, in its sole discretion, would purchase software licenses and tokens (which operate like credits under Eastern's licensing program), and make them available in Herbalife's client portal.  (HSUF 55, 60; ELA, HMSJ Comp. 332.)   Herbalife had the "option, in its sole discretion, but not the obligation, to redeem" the tokens and licenses.  (HSUF 56, 60; ELA, HMSJ Comp. 332, 337.)  "Should Herbalife not receive corporate approval" or "not need any new . . . licenses over the term, then they will not be obligated to purchase them."  (HSUF 60; ELA, HMSJ Comp. 337.)   The licenses and tokens would remain Eastern's property until Herbalife issued a PO to Eastern to purchase them.  (HSUF 56, 60; ELA, HMSJ Comp. 332, 337.)   Herbalife never issued a PO for the tokens or licenses.  (HSUF 58, 62 (effectively undisputed).)

Drawing all reasonable inferences in Eastern's favor as the nonmoving party, *Scott*, 550 U.S. at 378, no reasonable jury could find in favor of Eastern here, *Anderson*, 477 U.S. at 248.  Accordingly, Herbalife is entitled to summary judgment as a matter of law on Eastern's claim for breach of the ELA.

## C.   Promissory Estoppel

Herbalife moves for summary judgment on Eastern's promissory estoppel cause of action on the grounds that (1) there was no clear and unambiguous promise;

(2) Eastern's reliance was unreasonable as a matter of law; (3) Eastern alleges bargained-for consideration; and (4) Eastern failed to mitigate its alleged damages. (HMSJ 17–20; *cf.* HCC ¶¶ 44–50; E. Opp'n 17–20.)

To prevail on a claim for promissory estoppel, Eastern must prove that: (a) Herbalife made a clear and unambiguous promise; (b) Eastern reasonably and foreseeably relied on the promise; and (c) Eastern was injured by that reliance. *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 944 (2014). Such a promise will be binding if injustice can be avoided only by enforcement of the promise. *Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). Although promissory estoppel is an equitable doctrine and courts are given wide discretion in its application, *Jones*, 230 Cal. App. 4th at 945, the "existence of an estoppel is generally a question of fact," *Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc.*, 1 Cal. App. 5th 727, 734 (2016).

### 1. Clear and unambiguous promise

"[A] promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Glen Holly Ent. Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003) (quoting *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993)).

Herbalife argues that the various verbal "awards" to which Eastern cites all lack the necessary terms to stand in as viable unambiguous promises. (HMSJ 18.) For support, Herbalife points to purported verbal promises by Herbalife representatives in April, October, and December 2020, as well as the Equipment Order and the awards of Phases 1 and 2 of the BCDR project. (HMSJ 18–19.) However, Eastern submits admissible evidence raising a dispute of material fact regarding whether the promise(s) were sufficiently clear in the terms. For instance, Eastern provides evidence that Herbalife employees verbally informed Eastern representatives, as early as May 2020 "and many times thereafter," that Herbalife "awarded Phase 1" of the BCDR project to

Eastern.  (Decl. Martin O'Brien ISO E. Opp'n ("O'Brien Decl. E. Opp'n") ¶¶ 10–11, ECF No. 139-1; *see also* Decl. Brendan Lynch ISO E. Opp'n ("Lynch Decl. E. Opp'n") ¶ 20, ECF No. 139-1.)  Eastern also presents evidence that it submitted a detailed BCDR Phase 1 proposal and bill of materials to Herbalife prior to these verbal awards, providing specific and detailed terms.  (*See* O'Brien Decl. E. Opp'n ¶¶ 8–11; Lynch Decl. E. Opp'n ¶¶ 19–20; *see also* HSUF 9–11, 13 (undisputed).)  Finally, Eastern submits evidence supporting that, in October 2020, Herbalife representatives directed Eastern representatives to order the BCDR equipment so that Herbalife would have it before the end of that year.  (*See* EAMF 126–27 (disputed) (citing O'Brien Decl. E. Opp'n ¶¶ 20–21, 23–24; Lynch Decl. E. Opp'n ¶¶ 38–44).)

Drawing all reasonable inferences in Eastern's favor as the nonmoving party, *Scott*, 550 U.S. at 378, a reasonable jury could find in Eastern's favor here, *Anderson*, 477 U.S. at 248.  Accordingly, Eastern's cause of action for promissory estoppel does not fail on the basis of an unclear promise.

### 2. Reasonable reliance

Promissory estoppel requires that the promisee's reliance on the alleged promise be reasonable.  *Flintco Pac*, 1 Cal. App. 5th at 734.  "[W]hether the reliance was reasonable is a question of fact unless reasonable minds could reach only one conclusion based on the evidence, in which case the question is one of law." *Id.*

Herbalife argues Eastern could not have reasonably relied on the alleged promises because Herbalife's words and conduct make any reliance unreasonable as a matter of law.  (HMSJ 19–20.)  In particular, Herbalife notes that the Equipment Order would have been one of the largest in Herbalife's history, (HSUF 24), yet there was no PAR or PO for the Equipment Order or BCDR services, (HSUF 21).  Herbalife also highlights that Herbalife conducted an RFP for the second phase of the BCDR project, (HSUF 27), and Eastern continued to support Herbalife's bid for corporate approval and negotiate the BCDR proposal after the alleged promises, (HSUF 17, 29, 34–38, 40).

Again, Eastern submits admissible evidence which raises a genuine dispute of material fact regarding whether its reliance on Herbalife's alleged promises was reasonable.  For instance, Eastern supports that it attended numerous meetings over many months on the BCDR project, (*see* EAMF 74, 75, 120, 121, 125, 147, 150), and received directives and reassurances from Herbalife consistent with the promises, (E. Opp'n 12–13; EAMF 87, 90, 126–28, 154, 159; *see also* E. Resp. HAMF 46–48 (citing E. Dep. 165–72 (Herbalife representative provided Eastern an informal PO to send Dell to confirm Equipment Order)).  Eastern also supports its contention that Herbalife was inconsistent in following its professed procurement requirements. (ESGD 5, 7, 8, 15, 16; EAMF 81 (Herbalife email confirming Eastern is authorized to order certain equipment before PO), 151 (Herbalife had previously ordered equipment without a PO from Eastern).)

Drawing all reasonable inferences in Eastern's favor as the nonmoving party, *Scott*, 550 U.S. at 378, a reasonable jury could find in Eastern's favor here, *Anderson*, 477 U.S. at 248.  Accordingly, whether Eastern's reliance was reasonable remains a question of fact and this cause of action does not fail on the basis of reliance.

### 3.    *Bargained-for consideration*

Herbalife also contends this cause of action fails because Eastern alleges bargained-for consideration.  (HMSJ 20.)  "A cause of action for promissory estoppel is a claim in equity that substitutes reliance on a promise for consideration 'in the usual sense of something bargained for and given in exchange.'"  *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1412–13 (2014).  "If actual consideration was given by the promisee, promissory estoppel does not apply." *Id.* at 1413.  Modern pleading practice allows a party to plead promissory estoppel in the alternative to breach of contract based on the same facts.  *Id.*  As such, Eastern's allegation of bargained-for consideration does not defeat its cause of action for promissory estoppel on summary judgment.  Further, Herbalife fails to establish the absence of genuine dispute regarding whether either party actually provided the alleged consideration.  (*See generally* HMSJ 20); *Celotex,*

477 U.S. at 322–23 (stating that the burden to show the absence of a genuine issue of material fact lies with the moving party).  Thus, Eastern's promissory estoppel cause of action does not fail on this basis.

### 4. Failure to mitigate damages

Finally, Herbalife also contends this cause of action fails because Eastern did not mitigate it damages.  (HMSJ 20.)  Herbalife's argument here is that Eastern should have known the promises were not valid and therefore any damages incurred are Eastern's fault.  (HMSJ 12–13.)  This argument rests on the same disputed material facts as Herbalife's reasonable reliance argument and therefore fails for the same reasons.

**D.    Conclusion—Herbalife's Motion**

For the reasons discussed above, the Court **GRANTS** in part Herbalife's motion as to Eastern's causes of action for breach of oral contract and breach of the MSA, NDA, and ELA, and **DENIES** in part Herbalife's motion as to Eastern's cause of action for promissory estoppel.  (ECF No. 133.)

## VII.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Eastern's Motion for Summary Judgment, (ECF No. 127), and **GRANTS** in part and **DENIES** in part Herbalife's Motion for Summary Judgment, (ECF No. 133), as set forth above.

**IT IS SO ORDERED.**

March 18, 2024

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**