MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail: rplatt@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
E-mail: dbrown@manatt.com
TAL EDELSTEIN (Bar No. CA 346878)
E-mail: tedelstein@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Telephone:  310.312.4000
Facsimile:   310.312.4224

Attorneys for *Plaintiff and Counter-Defendant*
HERBALIFE INTERNATIONAL OF AMERICA, INC.

Martin R. Fox, Esq. (SBN 155783)
Scott E. Shapiro, Esq., *Of Counsel* (SBN 194352)
MFOX LAW GROUP, INC.
24801 Pico Canyon Road., Suite 300
Stevenson Ranch, CA 91381
Telephone: (818) 566-0011
Facsimile: (818) 566-0022
Email: info@mfoxlawgroup.com
       mfox@mfoxlawgroup.com
       scott@asattorney.com

Attorneys for *Defendant and Counter-Claimant,*
EASTERN COMPUTER EXCHANGE, INC.

FILED
CLERK, U.S. DISTRICT COURT

4/11/25

CENTRAL DISTRICT OF CALIFORNIA
BY: ____SE____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada corporation,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>EASTERN COMPUTER EXCHANGE, INC., a Connecticut corporation,<br><br>    Defendant and Counter-Claimant. | No. 2:22-CV-00347-ODW (AGRx)<br><br>**Hon. Otis D. Wright, II**<br><br>THIRD AMENDED JOINT WITNESS LIST<br><br>Pretrial Conference: March 17, 2025<br>Trial Date: April 8, 2025 |

403846911.1

Pursuant to Federal Rule of Civil Procedure 26(a)(3)(A), Central District Local Rule 16-5, Judge Wright's Scheduling and Case Management Order [Dkt. 28, § 7(d)], the Court's March 18, 2025 post-pretrial conference order [Dkt. 244], and the Court's instruction at the March 31, 2025 hearing to file an updated witness list taking into account the Court's rulings on the parties' motions *in limine*, plaintiff and counter-defendant Herbalife International of America, Inc. ("Herbalife") and defendant and counter-claimant Eastern Computer Exchange, Inc. ("Eastern") submit the following list of witnesses to be called at trial in the above-captioned action.

The parties stipulate that each witness will only testify once at trial. Thus, each witness, when called, will be questioned by each party regarding, as applicable, each party's claims and defenses. Pursuant to Judge Wrights Scheduling and Case Management Order § 7(e)(v), this list arranges the names of the witnesses in the approximate order in which they may be called to testify. Each party's time estimate includes total testimony time, including, as applicable, direct, cross, redirect, and recross. Time estimates are based on the trial schedule set forth in the March 18, 2025 Order: April 8-11, 2025.

The list does not include witnesses whom either party may call solely for purposes of rebuttal.

<u>Effect of ruling [Dkt. 281] on Motion *in Limine* No. 4 ("*MIL No. 4*") [Dkt. 266]</u>: The Parties disagree regarding the scope of the Court's ruling on *MIL No. 4*, which granted Herbalife's motion to exclude Eastern's BCDR employee hours chart and underlying evidence. Items in the witness list on which there is disagreement based on the ruling on MIL No. 4 are indicated by underscoring. The parties have set forth their respective positions on this disagreement in Ex. A hereto.

i. Doug Krieger, Director, Indirect Strategic Sourcing COE, Herbalife. [4/8/25] **Estimated time for in-person testimony**: 1.5 hour by Herbalife and 0.75 hours by Eastern. **Herbalife's anticipated subjects of testimony include**: procurement policies and procedures and their role in the relationship with Eastern; Eastern's BCDR bids and negotiations with Herbalife; Clear Edge's analysis of BCDR pricing at Herbalife; the sensitivity of Herbalife's data and Berg's disclosure of confidential

documents; the doctored PO that Eastern sent to Dell; and Krieger's supervisory role in the procurement aspects of the BCDR project at Herbalife. **Eastern's anticipated subjects of testimony include**: Herbalife's procurement policies and procedures; the sensitivity of Herbalife's data; his supervisory role in the procurement aspects of the BCDR project at Herbalife; his relationship with CDW and the effect it had on the BCDR project; Mr. Krieger's violation of policies which Herbalife claims other Herbalife employees violated; the lack of supervision or standards with respect to claimed procurement policies and procedures, and Mr. Krieger's communications with Reed Haley and David Pezullo. **Mr. Krieger's testimony is unique** because he will describe Herbalife's policies and procedures, which must be followed before a purchase can be made or vendor retained to provide services, and because he supervised Reed Haley, and Eastern disputes that Herbalife's purported policies and procedures were properly followed, disputes Herbalife utilized any such policies or procedures in a standardized manner, and will establish Herbalife had a history of not following such procedures. **Mr. Krieger can be contacted** through Herbalife's undersigned counsel.

ii. [4/8/25] Dave Pezzullo, former Chief Operating Officer, Herbalife. **Estimated time for in-person testimony**: 0.4 hours by Herbalife and 0.5 hours by Eastern. **Herbalife's anticipated subjects of testimony include**: Herbalife's past BCDR capabilities and infrastructure, and potential plans from a senior executive perspective, including required approvals; statements in Herbalife's securities filings regarding BCDR; Berg's and Vetere's performance at Herbalife; the BCDR presentation to Herbalife's Board of Directors ("Board"); the impact of the Board approval on BCDR; problems and concerns with proposed BCDR project; lack of knowledge of Eastern's Dell equipment order; the decision to put the BCDR project on hold; and details relating to Deloitte's retention and work. **Eastern's anticipated subjects of testimony include**: Herbalife's BCDR capabilities, infrastructure, and potential plans from a senior executive perspective; the BCDR presentation to Herbalife's Board of Directors ("Board"); the impact of the Board approval on BCDR; the decision to put the BCDR project on hold; Mr. Pezullo's decision to act contrary to the Herbalife Board of Directors' mandate on the BCDR Project; and details relating to Deloitte's retention and work. **Mr. Pezzullo's testimony is unique** because he was the only live witness who attended certain executive meetings and presented at the Board meeting on October 27, 2020 to gain approval for a BCDR project. He will also testify to certain aspects of the decision to put the BCDR project on hold and Deloitte's recommendations. **Mr. Pezzullo can be contacted** through Herbalife's undersigned counsel.

iii. [4-9-25] Brendan Lynch, Chief Executive Officer, Eastern. **Estimated time for in-person testimony**: 3.3 hours by Herbalife and 1.75 hours by Eastern. **Herbalife's anticipated subjects of testimony include**: Eastern's proposals for BCDR and other technology initiatives for Herbalife; Eastern's and Lynch's relationship with Herbalife personnel, including history and relationship with Berg and Vetere; the MSA and Eastern's knowledge of Herbalife's procurement requirements; Herbalife's BCDR capabilities, infrastructure, and potential plans; responses to RFPs regarding BCDR; meetings with Herbalife representatives, including on October 28, 2020; favors for Berg; the doctored purchase order dated

October 30, 2020 that was provided to Dell; Eastern's receipt of an incentive payment from Dell for placing the October 30, 2020 equipment order; communications with Dell regarding the equipment order; the lack of writings evidencing a BCDR deal between the parties; the "offer letters" sent to Reed Haley in January 2021 for BCDR; the settlement agreement and release between Dell and Eastern relating to Eastern's order of equipment allegedly on behalf of Herbalife; Eastern's receipt of confidential documents; and Eastern's invoices to Herbalife. **Eastern's anticipated subjects of testimony include**: Eastern's proposals for BCDR and other technology initiatives for Herbalife; Eastern's relationship with Herbalife witnesses; Herbalife's BCDR capabilities, infrastructure, and potential plans; meetings with Herbalife representatives, including but not limited to the October 28, 2020 meeting at Herbalife's Torrance offices; the purported fraudulent purchase order dated October 30, 2020 that was provided to Dell; Eastern's receipt of an incentive payment from Dell for placing the October 30, 2020 equipment order; the writings evidencing a BCDR deal between the parties; mitigation of damages efforts including the communications sent to Reed Haley in January 2021 for BCDR; Work performed on Herbalife's equipment "refresh" efforts, and the BCDR Project including Phase 1 and Phase 2; Eastern's invoices to Herbalife, and communications with Peter Bray, Gerry Berg, Rhonda Vetere, Reed Haley, and Dell. **Mr. Lynch's testimony is unique** because he was involved in all negotiations relating to BCDR and involved in Eastern's day-to-day operations. **Mr. Lynch can be contacted** through Eastern's undersigned counsel.

iv. Steve Edgecombe, Senior Vice President, Chief Information Security Officer, Herbalife. **Estimated time for in-person testimony**: 0.3 hour by Herbalife and 0.3 hour by Eastern. **Herbalife's anticipated subjects of testimony include**: Herbalife's BCDR capabilities, infrastructure, and potential plans and related cyber security issues; Eastern's BCDR proposal; Herbalife's decision to put the potential BCDR project on hold; and Deloitte's involvement in analyzing BCDR at Herbalife. **Eastern's anticipated subjects of testimony include**: His prior involvement concerning Herbalife's BCDR capabilities, his involvement on reporting of Herbalife's BCDR capabilities to third parties; and Mr. Edgecombe's communications with Herbalife employees including Edward Bezerra. **Mr. Edgecombe's testimony is unique** because, according to Herbalife, his knowledge of cyber security issues in BCDR plans and proposals, why the BCDR project was put on hold, and details relating to Deloitte's retention and work, and, according Eastern, his communications to Herbalife employees about disregarding important technology issues at Herbalife so as to not cause issues with third parties, such as insurance companies, his testimony regarding cyber security issues in BCDR plans and proposals, why the BCDR project was put on hold, details relating to Deloitte's retention and work, and his communications to Herbalife employees about disregarding important technology issues at Herbalife so as to not cause issues with third parties, such as insurance companies. **Mr. Edgecombe can be contacted** through Herbalife's undersigned counsel.

v. Gerry Berg, former Vice President of Infrastructure & Operations, Herbalife. **Estimated time for in-person testimony**: 1.8 hour by Herbalife and 1.25 hour by Eastern. **Herbalife's anticipated subjects of

**testimony include**: Berg's relationship with Eastern; meetings relating to BCDR; negotiations with Eastern for a BCDR project; procurement requirements, authorization, knowledge, and communications relating to the BCDR project and equipment order; Herbalife's November 2020 RFP, including RFP requirements; communications with Eastern and Dell Technologies ("Dell"); the doctored PO that Eastern sent to Dell; Berg's provision of confidential documents to Eastern; and Berg's performance at Herbalife. **Eastern's anticipated subjects of testimony include**: negotiations with Eastern for a BCDR project; issues of authorization and knowledge relating to the BCDR project and equipment order; Herbalife's BCDR capabilities; communications with Herbalife, Eastern, and Dell; Berg's performance at Herbalife; the October 28, 2020 meeting at Herbalife's Torrance offices with Eastern representatives; Mr. Berg's communications with David Pezullo; Ms. Vetere's efforts to comply with Herbalife Board of Directors' mandate on the BCDR Project and her directives to Henry Lee and Gerry Berg in furtherance of those Board of Director directives. **Mr. Berg's testimony is unique** because Eastern is claiming that Mr. Berg and Mr. Bray authorized a $22 million equipment order from Dell. While Mr. Bray contests such communications, Mr. Berg testified that the authorized was made and that it was done so at the direction of then acting Chief Technology Officer Rhonda Vetere and executive Henry Lee. **Mr. Berg can be reached** through his attorney, Anthony LoPresti, at 646-490-0065.

vi. [4/10/25] Stuart Davis, former Vice President of Global Sourcing, Herbalife. **Estimated time for in-person testimony**: 0.2 hour by Herbalife and 0.5 hour by Eastern. **Herbalife's anticipated subjects of testimony include**: Herbalife's RFP protocols as to vendor registrations with OEMs and Herbalife's vendor selection criteria, and Mr. Davis's lack of knowledge of the $22M Dell equipment order. **Eastern's anticipated subjects of testimony include**: the interaction and responsibilities between the Global Sourcing department and the Global Technology Services department, Herbalife's goals and methods with respect to running the Global Sourcing department, Herbalife's interaction with Dell Computers, and Mr. Davis' knowledge and actions after finding out that Eastern was inquiring on where to deliver network equipment. **Mr. Davis's testimony is unique** because he was the head of Global Sourcing at Herbalife and Doug Krieger's supervisor. **Mr. Davis can be contacted** through Herbalife's undersigned counsel.

vii. [4/10/25] Haven Prescott, Jr., Director, former Program Management, Herbalife.* **Estimated time for in-person testimony**: 1.25 hour by Eastern, and 0.7 hour by Herbalife. **Eastern's anticipated subjects of testimony include**: issues of authorization and knowledge relating to the BCDR project and equipment order, his communications with, and the admissions made by, Reed Haley concerning CDW and Eastern, which Mr. Prescott communicated to Julie Ting of Herbalife; Mr. Prescott's leadership and involvement with the BCDR project; the thousands of hours spent by Herbalife and Eastern personnel on the Herbalife BCDR Project including on weekends; the Deloitte review of the BCDR project; knowledge of the Eastern involvement and order; and Mr. Prescott's weekly communications to C-Level executives and management on the status of the BCDR Project from November 2020 through at least February 2021. **Herbalife's anticipated subjects of testimony include**:

Mr. Prescott's lack of knowledge of the $22M Dell equipment order, and the need for approvals before ordering equipment. **Mr. Prescott's testimony is unique** because, according to Eastern, Mr. Haley confided in him and disclosed his conduct concerning Eastern and CDW, and according to Herbalife, Mr. Prescott was in charge of project trackers confirming the need for approvals. Herbalife doesn't know whether Mr. Prescott has counsel in relation to this case.

viii. Jim Soja, VP PMO Group at Eastern. **Estimated time for in-person testimony**: 0.5 hours by Eastern, and 0.1 hour by Herbalife. **Eastern's anticipated subjects of testimony include:** his own work and his supervision of Eastern representatives with operations and logistics concerning Eastern's services rendered to, and goods procured for, Herbalife. **Herbalife's anticipated subjects of testimony include:** the lack of foundation for any estimate of hours allegedly spent, and confirming that Eastern is not compensated by clients for Eastern's wages. **Mr. Soja's testimony is unique** because, according to Eastern, Mr. Soja will testify about the hundreds of hours he spent including while interacting with Herbalife's team, and as to the hundreds of hours spent by the Eastern representatives he supervised on the BCDR project. **Mr. Soja can be contacted** through Eastern's undersigned counsel.

ix. Roxane Contreras, Director of Global Security and Safety, Herbalife. **Estimated time for in-person testimony**: 0.1 hour by Herbalife and 0.1 hour by Eastern. **Herbalife's anticipated subjects of testimony include**: authentication of keycard data for Herbalife's Torrance facility. **Eastern's anticipated subjects of testimony include**: cross-examination on her purported area of knowledge and conclusions thereon. **Ms. Contreras's testimony is unique** because she can authenticate records showing whether certain personnel entered Herbalife's Torrance facility on October 27, 2020, when a disputed meeting allegedly occurred. **Ms. Contreras can be contacted** through Herbalife's undersigned counsel.

x. Henry Lee, Vice President, Global Technology Governance, Herbalife. **Estimated time for in-person testimony**: 0.7 hour by Herbalife and 1 hour by Eastern. **Herbalife's anticipated subjects of testimony include**: the financial aspects of the BCDR project at Herbalife, including the process to authorize use of capital expenses, (i.e., CapEx funds) for technology projects; Herbalife's procurement requirements; a supposed October 27, 2020 meeting with Bray and Berg; actual meetings relating to BCDR; lack of knowledge of Eastern's Dell equipment order; Herbalife's invoice requirements; and problems with the proposed BCDR project. **Eastern's anticipated subjects of testimony include**: the pressure to get the BCDR project and equipment in 2020; the financial aspects of the BCDR project at Herbalife, including the process to authorize use of capital expenses, (i.e., CapEx funds) for technology projects; and various meetings relating to BCDR; and Mr. Lee's communications with Herbalife employees Rhonda Vetere and Gerry Berg, and Eastern. **Mr. Lee's testimony is unique** because he can testify regarding budgetary and financial aspects of projects at Herbalife, and because Mr. Lee was CIO Rhonda Vetere's right hand person at Herbalife. **Mr. Lee can be contacted** through Herbalife's undersigned counsel.

4/10/25

xi. Marty O'Brien, Sales Director, Eastern. **Estimated time for in-person testimony**: 0.6 hours by Herbalife and 0.75 hours by Eastern. **Herbalife's anticipated subjects of testimony include**: Eastern's proposals for BCDR and other technology initiatives for Herbalife from a sales perspective; Eastern's knowledge of Herbalife's procurement requirements and how they were normally followed; meetings regarding BCDR, including on October 28, 2020; the BCDR equipment order from Dell on October 30, 2020; the lack of writings evidencing a BCDR deal between the parties; the "offer letters" sent in January 2021 for BCDR; Eastern's receipt of confidential documents; and Eastern's invoices to Herbalife. **Eastern's anticipated subjects of testimony include**: Eastern's proposals for BCDR and other technology initiatives for Herbalife from a sales perspective; meetings with Herbalife representatives, including but not limited to the October 28, 2020 meeting at Herbalife's Torrance offices which was attended by Mr. O'Brien, Mr. Lynch, Mr. Berg, and Mr. Bray wherein the equipment order was requested and authorized by Herbalife; the BCDR equipment order from Dell on October 30, 2020; the almost 2,000 hours he had to work on the BCDR Project in advance and after the Herbalife Board of Directors' approval of the BCDR Project spend; the "offer letters" sent in January 2021 for BCDR; and Eastern's invoices to Herbalife. **Mr. O'Brien's testimony is unique** because he was in charge of sales at Eastern. **Mr. O'Brien can be contacted** through Eastern's undersigned counsel.

4/10/25 by video

xii. Rhonda Vetere, former Chief Information Officer for Herbalife. **Estimated time for in-person testimony**: 2 hours by Herbalife and 1.25 hours by Eastern. **Herbalife's anticipated subjects of testimony include**: Vetere's role at Herbalife and prior employers; her history and relationship with Eastern; Berg's performance at Herbalife; Vetere's prior testimony in this case; Herbalife's procurement requirements, issues of authorization, knowledge, and relating to the BCDR project and equipment order; meetings in October 2020 regarding BCDR; communications with Dell; ClearEdge's analysis of BCDR pricing at Herbalife; and Oracle licenses for BCDR; and the decision to put the project on hold. **Eastern's anticipated subjects of testimony include**: Vetere's role at Herbalife and prior employers; her relationship with Eastern; issues of authorization and knowledge relating to the BCDR project and equipment order; communications with Dell; ClearEdge's analysis of BCDR pricing at Herbalife; Oracle licenses for BCDR, Ms. Vetere's communications with David Pezullo; and Ms. Vetere's efforts to comply with Herbalife Board of Directors' mandate on the BCDR Project and her directives to Henry Lee and Gerry Berg in furtherance of those Board of Director directives. **Ms. Vetere's testimony is unique** because Eastern is claiming that Vetere became aware of the $22M Dell equipment order. **Contact information**: Herbalife doesn't know whether Ms. Vetere has counsel in relation to this case.

4/10/25 (by video)

xiii. Walter Rival, Chief Technology Officer, Eastern. Mr. Rival will only testify via deposition. **Estimated time for deposition testimony**: 0.1 hours by Herbalife, and 0.2 hours by Eastern. (Herbalife's designation of deposition: 19:8-15; 35:8-16; 38:25-39:13; 40:4-13; 43:5-8; 43:16-22; 73:15-20; 74:4-10; 86:5-7; 135:24-136:6; 137:15-18; 143:9-15; 169:16-19; 177:1-6; 184:5-9.) (Eastern's designation of testimony: 13:8-21; 18:7-22:3; 43:24-46:14; 71:18-25; 72:24-75:7; 143:16-146:20; 150:5-

1; 152:3-25; 173:2-21; 174:7-22; 176:5-8; 178:22-179:21; 246:23 - 250:4; 250:11-16; and 251:20 - 263:14.) **Herbalife's anticipated subjects of testimony include:** Eastern's responses to RFPs relating to BCDR; Eastern's relationship with Berg; Eastern's Dell equipment order; knowledge of the Dell equipment order, and drafting the Purchase Authorization Request with Herbalife. **Eastern's anticipated subjects of testimony include:** the technical aspects of Eastern's work on BCDR, including the Application Impact Analysis, and other technology initiatives for Herbalife; and drafting the Purchase Authorization Request with Herbalife. Mr. Rival's testimony includes description of his own work and hundreds of hours designing and building of the BCDR project for Herbalife. **Mr. Rival's testimony is unique** because he designed the BCDR proposal to Herbalife, assisted Herbalife in preparing BCDR approval documents, and describes the amount of time he spent on the project. **Mr. Rival can be contacted** through Eastern's undersigned counsel.

xiv.    Peter Bray, Senior Director of Technology Strategy & Governance, Herbalife. **Estimated time for in-person testimony:** 0.4 hours by Herbalife and 1 hour by Eastern. **Herbalife's anticipated subjects of testimony include:** issues regarding authorization and knowledge of the BCDR project and equipment order; a supposed October 27, 2020 meeting with Lee and Berg; and the October 28, 2020 meeting with Eastern representatives. **Eastern's anticipated subjects of testimony include:** issues regarding authorization and knowledge of the BCDR project and equipment order; and the October 28, 2020 meeting at Herbalife's Torrance offices with Eastern representatives; and Mr. Bray's follow up emails concerning the equipment order. Mr. Bray's testimony is unique because Eastern is claiming that Mr. Bray orally directed that a $22 million equipment order from Dell and did so through Mr. Bray and Mr. Berg, and Mr. Bray then followed up in writing about the order on 12/22/2020. **Mr. Bray can be contacted** through Herbalife's undersigned counsel.

[handwritten: 4/11/25]

xv.    Mark Schissel, Chief Operating Officer, Herbalife. **Estimated time for in-person testimony:** 0.4 hour by Herbalife and 0.4 hours by Eastern. **Herbalife's anticipated subjects of testimony include:** Herbalife's current and past BCDR capabilities and infrastructure, and potential plans, including how Herbalife protects its IT systems; Berg's performance at Herbalife; the structure of Herbalife's departments implicated by a BCDR project; Herbalife's BCDR needs and objectives;; the BCDR presentation to Herbalife's Board of Directors; problems and concerns with proposed BCDR project, and putting the project on hold; and retention of Deloitte regarding BCDR. **Eastern's anticipated subjects of testimony include:** Herbalife's current and past BCDR capabilities, infrastructure, Mr. Schissel's decision to act contrary to the Herbalife Board of Directors' mandate on the BCDR Project; the structure of Herbalife's departments implicated by a BCDR project; and meetings with Deloitte regarding BCDR and alternative BCDR solutions. **Mr. Schissel's testimony is unique** because of his technical knowledge regarding Herbalife's capabilities and needs, as well his involvement as a senior executive, and because he can provide testimony on the technical aspects and problems of Eastern's BCDR proposal, as well his involvement as a senior executive. **Mr. Schissel can be contacted** through Herbalife's undersigned counsel.

[handwritten: 4/11/25]

*[Handwritten: 4/10/25 (by video)]*

xvi. *[Handwritten: 4/11 also]* Edward Bezerra, former Sr. Dir, Global Distributed Computing Engineering & Operations, Herbalife. Mr. Bezerra will only testify via deposition. **Estimated time for deposition testimony**: 0.2 hours by Eastern, and 0.1 hours by Herbalife. (Eastern designation of deposition: 18:24-20:8; 22:4-13; 23:2-9; 25:6-13; 29:14-31:12; 31:16-20; 32:1-5; 33:3-5; 35:17-36:1; 38:18-39:6; 39:16-19; 39:25-40:23; 41:10-24; 51:14-52:12; 53:9-17; 55:1-22; 57:9-19; 59:1-60:10; 64:10-14; 65:4-66:9; 66:18-69:1; 69:17-70:7; 72:17-74:21; 75:7-80:10; 83:23-85:10; 85:13-86:1; 85:13-90:25; 92:5-93:20; 98:2-100:4; 95:16-96:17; 100:5 – 101:20; 101:21-104:6; 104:14-107:22; 107:24 - 108:19; 109:25-110:5.) (Herbalife's designation of deposition: 54:19-55:1; 55:22-57:7; 57:19-58:22; 80:14-81:1; 85:13-86:1; 86:6-8; 87:23-88:8; 93:20-25; 100:5-101:20; 110:6-7; and 110:16-112:25.) **Eastern's anticipated subjects of testimony include:** Mr. Bezerra's role at Herbalife; pressure concerning implementation of the BCDR project; issues concerning executive pressure to disregard important technology gaps and vulnerabilities; the authorization of certain non-BCDR projects at Herbalife; VMWare licenses; and issues of authorization and knowledge relating to the BCDR project and equipment order. **Herbalife's anticipated subjects of testimony include:** Mr. Bezerra's lack of knowledge of the $22M Dell equipment order, and the need for approvals before ordering equipment. **Mr. Bezerra's testimony is unique** because Mr. Bezerra confirms the volume of work that the BCDR project entailed, Eastern's service on projects, including the BCDR project, and because of Mr. Bezerra's communication to colleagues and Eastern that no equipment could be ordered until there was approval. **Mr. Bezerra can be reached** through his attorney, Steven Gooby, at 732-993-9848.

xvii. Andrew Dunbar, Herbalife's Chief Compliance Officer, Senior Vice-President of Ethics and Compliance.* **Estimated time for in-person testimony**: 0.1 hour by Eastern. Eastern Deposition designation: 11:1-18:16; 23:21-24:17; 26:16-25; 31:17-32:10; 33:6-37:11; 39:23-41:10; 41:13-44:14; and 45:7-46:9. **Eastern's anticipated subjects of testimony include:** Mr. Dunbar's authentication of investigation reports, including a document that has "draft" on each page, concerning legal compliance and reporting concerning Herbalife's BCDR capabilities; Mr. Dunbar's receipt of Exhibit 41; and the internal Herbalife conflict between the GTS and GSS department. **Mr. Dunbar can be contacted** through Herbalife's undersigned counsel.

xviii. *[Handwritten: 4/11/25]* Frank Donaldson, Global Vice President Sales and Datacenter & Security Transformation Expert at Eastern. **Estimated time for in-person testimony**: 0.4 hours by Eastern, and 0.1 hour by Herbalife. **Eastern's anticipated subjects of testimony include:** Mr. Donaldson's own work, and his supervision of Eastern representatives, on work with and for Herbalife on Network and Data Security related Eastern rendered services to, and goods procured for, Herbalife. **Herbalife's anticipated subjects of testimony include:** the lack of foundation for any estimate of hours allegedly spent, and confirming that Eastern is not compensated by clients for Eastern's wages. **Mr. Donaldson's testimony is unique** because, according to Eastern, Mr. Donaldson will testify about the hundreds of hours he spent including while interacting with Herbalife's team, and as to the hundreds of hours spent by the Eastern representatives he supervised on the BCDR project. **Mr. Donaldson can be contacted** through Eastern's undersigned counsel.

xix. Todd Lawless, Senior Vice-President of Operations & Logistics at Eastern. **Estimated time for in-person testimony**: 0.4 hours by Eastern, and 0.1 hour by Herbalife. **Eastern's anticipated subjects of testimony include:** his own work and his supervision of Eastern representatives on operations and logistics concerning Eastern's services rendered to, and goods procured for, Herbalife. **Herbalife's anticipated subjects of testimony include:** the lack of foundation for any estimate of hours allegedly spent, and confirming that Eastern is not compensated by clients for Eastern's wages. **Mr. Lawless' testimony is unique** because, according to Eastern, Mr. Lawless will testify about the hundreds of hours he spent including while interacting with Herbalife's team, and as to the hundreds of hours spent by the Eastern representatives he supervised on the BCDR project. **Mr. Lawless can be contacted** through Eastern's undersigned counsel.

xx. Rich Winston, VP of Systems Engineering and Solutions at Eastern. **Estimated time for in-person testimony**: 0.4 hours by Eastern, and 0.1 hour by Herbalife. **Eastern's anticipated subjects of testimony include:** his own work and his supervision of Eastern representatives in the designing and building of the BCDR project for Herbalife. **Herbalife's anticipated subjects of testimony include:** the lack of foundation for any estimate of hours allegedly spent, and confirming that Eastern is not compensated by clients for Eastern's wages. **Mr. Lawless' testimony is unique** because he interacted with Herbalife's team, and supervised Eastern's team, concerning the BCDR project. **Mr. Lawless can be contacted** through Eastern's undersigned counsel.

xxi. Julie Ting, Vice President, Counsel, Herbalife.* **Estimated time for in-person testimony**: 0.1 hour by Eastern and 0.1 hour by Herbalife. **Eastern's anticipated subjects of testimony include:** witness admissions made to Ms. Ting which are material to the litigation, and authentication of Ms. Ting's notes of those admissions. **Herbalife's anticipated subjects of testimony include:** Eastern's $57M invoice to Herbalife. **Ms. Ting's non-privileged testimony is unique** because, according to Eastern, Ms. Ting questioned and obtained admissions from several key witnesses, and because she received Eastern's invoice. **Ms. Ting can be contacted** through Herbalife's undersigned counsel.

Dated: April 4, 2025           MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Donald R. Brown
Donald R. Brown
Attorneys for *Plaintiff and Counter-Defendant*, HERBALIFE INTERNATIONAL OF AMERICA, INC.

Dated: April 4, 2025

MFOX LAW GROUP, INC.

By: /s/ Scott E. Shapiro
Scott E. Shapiro, *Of Counsel*
Attorney for *Defendant and Counter-Claimant*, EASTERN COMPUTER EXCHANGE, INC.

## **LOCAL RULE 5-4.3.4(a)(2)(i) CERTIFICATION**

The filer of this document attests that all other signatories listed above on whose behalf this filing is submitted concur in the filing's content and have authorized the filing.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

403846911.1

- 11 -

THIRD AMENDED JOINT WITNESS LIST

# EXHIBIT A

<u>Eastern's position on *MIL 4* ruling:</u> Eastern's understanding of the Court's ruling on *MIL No. 4* was solely excluding the "employee chart hours" such as charts of all employee hours and not that the Court was excluding Eastern employee witnesses that will take the stand and give testimony about the nature of their work on the BCDR project, their general daily activities for work including hours worked, the amount paid to them by Eastern, and their hourly rate, all to establish Eastern's good faith in defense of Herbalife's Fraud Claim and in support of Eastern's Promissory Estoppel Claim. Thus, Eastern understood the Court's ruling on *MIL No. 4* was the Court's was excluding employee hours charts, not that it was intended to be an exclusion of testimony they would give on the stand.

<u>Herbalife's position on MIL 4 ruling:</u> Herbalife's understanding of the Court's ruling on *MIL No. 4* was that the Court was excluding, not only any chart of hours supposedly spent by Eastern employees in relation to BCDR, but also any testimony purporting to estimate the amount of hours allegedly spent, because the premise of MIL No. 4 was that Eastern did not track employee hours, thus rendering any estimate unreliable. Thus, Eastern employees may testify about the work they did, but may not testify about the number of hours they—or any employees under their supervision—spent on BCDR, or what salaries were paid to Eastern employees.